## PHILIP PLUNKETT,

*vs.*

## PATRICK DILLON.

*New Castle, Feb. T., 1871.*

Where the bill was filed to restrain a suit for damages, for the failure of complainant to satisfy a judgment, entered upon a bond given for an alleged advance of money, under a written agreement for the joint purchase of land, and a division of the profits accruing from the venture, the claim that a balance remains unpaid, for which the defendant is liable, either as a co-partner or as a trustee, is an equitable defense which will justify the withdrawal of the controversy into the Court of Chancery.

An agreement in writing between P. and D. for the joint purchase of land for improvement and sale, with money advanced by P., who is to be repaid, principal and interest, together with two-thirds of the profits, if any, the other third to go to D., and a loss, if sustained, to be borne in the same proportion, P. being secured by the judgment bond of D. for the amount of the advance, is not, upon its face, a cover for usury under the guise of a partnership. The feature which saves it is the liability of P. for a share

of the losses. Though the terms of an agreement are grossly unequal for a partnership, and open to suspicion of usury, if the transaction is asserted by the bill to be a partnership, and no usury appear upon its face, the Court cannot assume it, in the absence of evidence.

Where the case, presented by the answer, is not a failure to satisfy a judgment properly entered, but the entry of a judgment upon a bond, under which nothing remained due and unpaid at the time of entry, an injunction against a suit for damages caused by the failure to enter satisfaction of the judgment will not be dissolved, because it would send the parties out of this Court, only to return to it upon a bill filed for a decree, declaring the judgment fraudulently entered, as preparatory to the suit for damages.

A judgment cannot be impeached collaterally, but only directly, by proceedings to vacate or set it aside. These may be taken, either in the Court when it was entered, or by bill in equity; but except in very simple cases, the latter is the better proceeding.

A cross-bill ordered to be filed by the defendant, where it was, shewn by the bill and answer, to be necessary to put the cause in such condition as that a decree might be made in any event, to settle all controversies, between the parties, raised by the pleadings.


BILL IN EQUITY TO RESTRAIN PROCEEDINGS AT LAW, AND FOR AN INJUNCTION; MOTION TO DISSOLVE.—The bill was filed to restrain two suits at law brought by the defendant against the complainant, one being an action of assumpsit, upon the common counts, to recover a balance due upon various transactions between the parties, and the other an action for damages accruing from the entry of a judgment upon the defendant's bond for $3000, which, it was claimed by the defendant, was fully paid prior to the entry of judgment, and which was also alleged to have been originally usurious and void.

The bill alleged an agreement between the parties in August, A. D. 1864, for the joint purchase of land, and for the sale of the same upon partnership account, which agreement was afterwards reduced to writing as follows:—

"Wilmington, Delaware, August,—A. D. 1864. This "is to certify and show, that P. Plunkett, of the city of

63

"Wilmington, New Castle county, and State of Delaware,
"and I Patrick Dillon of the same city and State, purchased
"from Ferris and Garrett, three hundred and seventy-five
"feet (375) of land, fronting on Madison street from Second
"to Third streets, and in depth ninety-seven (97) feet,
"Philip Plunkett paying for the same the sum of three
"thousand (3000) dollars, for which I received the deed for
"the same. But I acknowledge and agree for myself and
"my heirs, that said Plunkett is to be paid back his three
"thousand dollars (3000) with interest, and receive as his
"share of the profits, if any there shall be, two-thirds, and
"I one-third, and if a loss should be sustained, we are to
"bear it in the said proportion. In consideration of my re-
"ceiving the deed, I executed, this day, a judgment bond
"for three thousand dollars (3000), for which I hold myself
"accountable until the property shall be sold, when the
"proceeds of such sale shall go to pay off said bond.
"Witness my hand the day and year above written."

It was also alleged that the complainant advanced
the sum of $3000 to pay for the land, and receive, as se-
curity therefor, a bond of the defendant for that amount,
with interest upon which judgment had been entered on
November 10th, 1869, and which was still unpaid. That the
arrangement was for mutual benefit, and that defendant,
who was a master carpenter, had frequently been accom-
modated by complainant with loans, for use in his business
of erecting houses, and improving and selling land.

In the present case the defendant went into posses-
sion, improved some lots, and sold some with, and some
without, improvements. For a share of the profits upon
which operations, the bill claims that the defendant was
liable under the agreement.

The complainant claimed, in addition to the sums
due upon the said bond, and for profit on the land
purchased, that defendant was indebted to him for sundry

other sums, viz: loans on due bill, amounting to $954; stone furnished to the value of $28; a balance of indebtedness on book account of $341.77 due from defendant, as the survivor of the firm of Dillon & Plunkett, and a due bill for $10, dated November 21, 1868.

The bill further alleged that, on June 28, 1869, the parties had met and adjusted their accounts and ascertained a balance against defendant of $334.18, for which amount he had given complainant his due bill of that date which complainant still held, unpaid. At the same time the due bills for $954 were delivered to defendant.

The bill then recited the suits in the Superior Court, averring that, in the bill of particulars filed, in the suit upon the common counts, the judgment bond for $3,000, is a principal item, and that all the other items arose out of the before—mentioned transactions, and that no credit is given to complainant therein for profits in the land transactions, nor for the amounts of the due bills surrendered, of which complainant has no evidence except what he can derive from the defendant. The complainant alleges that he does not object to a re-opening of the accounts, but cannot safely go to a trial at law without a discovery by the defendant, and a production of evidence from him touching the settlement of June 28, 1869. And the complainant alleges that there were errors against him in the said settlement, in the failure to credit him with two-thirds of the profit on portions of the land sold or retained by the defendant, and with the debt due from Dillon & Plunkett.

The prayer of the bill is for answer, account of the judgment, discovery respecting the settlement and its establishment, with rectification of any errors against the complainant, or, if the settlement be rejected, then for an account in full between the parties and payment of balance due complainant, and for injunction against the suits at law; also for other relief and for subpœna.

The answer denied that there was any such agreement either verbal or written, as alleged, or that defendant signed any such paper knowing the contents thereof, and that if the defendant did sign the paper set up in the bill it was done ignorantly, and the signature was obtained upon fradulent and false representations by the complainant. On the other hand, the defendant claimed to have purchased the land in question on his own account, without consultation with complainant, and after having completed his contract of purchase, he borrowed of complainant the sum of $3,000, which was paid for the land and for which the latter took defendant's bond as security for an ordinary loan. The defendant entered into possession of the land, and he alleges that he agreed to repay the said loan to complainant, with six per cent. interest, merely, and utterly denied the alleged agreement for a joint purchase. Complainant did afterwards suggest the payment to him of a share of the profits in view of the great advantage derived by defendant from the purchase, but defendant neither acquiesced in, nor declined, the proposition.

The answer admits the entry of judgment on the bond, but avers that it was done contrary to the express agreement of complainant not to enter it, and now claims that nothing is due upon it, but that the complainant is largely indebted to him.

The defendant admits his occupation as a builder, but denies having been engaged in joint business enterprises, with complainant. The answer sets forth in detail the disposition of the land, the sale of portions in lots, and the improvement and sale of other parts, and the prices realized from the same. It admits some items of other indebtedness to complainant, as set forth in the bill, to have been proper claims, but denies any indebtedness to complainant remaining upon a correct statement of their mutual accounts. That such a settlement was ever made

is denied, but it is alleged that complainant exhibited to defendant what he termed a statement of their accounts, claiming a balance of $334.17 for which amount defendant gave him a due bill without examination, reposing undue confidence in the complainant. The answer then sets forth the particulars in which defendant alleges that the so called settlement should be corrected in his favor, by reason of which the defendant claims that there is due to him in a proper settlement, the sum of $5001.87, with interest from Febuary 1st, 1870, to recover which the suit, No. 49, to the May Term of the Superior Court, 1870, was instituted.

The defendant alleges, with respect to the other suit, No. 143, that it was brought to recover damages for the refusal of complainant to enter satisfaction of the judgment for $3000., which, it is charged, was entered with the vindictive desire to injure defendant, and, that its effect was the destruction of his business and has already compelled him to make an assignment by interfering with his business of selling real estate, and has damaged him to the amount of $10,000.

At the February Term, 1871, the answer having been filed, a motion was made on behalf of the defendant, to dissolve the injunction so far as it restrains the defendant from prosecuting the suit for damages.

*Gordon* and *G. H. Bates*, for the defendant.—

This motion may be sustained upon two grounds.—1st Want of equity in the bill. 2nd. The denial of the alleged equity of the bill in the answer.

*First.* As to the equity of the bill.

1. The paper writing relied on is not, on its face, a valid contract of partnership.

(1.) It is an usurious contract. *Colly. on Partn.*, Sec. 63; *Morrisset vs. King*, 2 *Burr.*, 891; *Festons vs. Brooke*, *Cowp.* 793; *Morse vs. Wilson*, 4 *Term*, 353; 2 *Pars. on Cont.*, 420.

(2.) It is without mutuality and consideration, and wholly within complainant's control;—not, therefore, of force as a contract.

2. Even admitting the contract as alleged, it appears, by the accounts, that there is nothing due on the judgment.

*Second.* The effect of the denial of the answer.

The denial is full, (1) as to any *verbal* agreement of partnership, (2) as to the execution of the paper writing, and (3) that there is any balance due on the judgment. The last point is conclusive, because that is the only material fact touching our right to enforce satisfaction of the judgment. An examination of the accounts, presented by the bill, shows errors which, when presented, leave a large balance due the defendant.

We might claim a dissolution of the injunction as to both suits, but we are satisfied to leave in this court the suit on the common counts, because it involves an examination of accounts.

So far as the bill seeks discovery, the answer satisfies it, and for that purpose the injunction cannot stand. As to the relief sought, viz :—restraining the suit for not satisfying the judgment,the sole question is as to payment, and to that the answer is full, while the bill alleges that the complainant has no evidence but defendant's answer.

With respect to the discretion of the court,—the injunction works irreparable injury to defendant, having already compelled an assignment and greatly embarrassed him. On the other hand, to dissolve it works no injury to complainant, for the defendant cannot recover in the suit, but *on proof of full payment of the judgment. Hilliard on Inj.*

*sec.* 39, *p.* 27. There is no difficulty in a dissolution of the injunction in part. *Ib.*, *sec.* 105, *p.* 134.

*Patterson*, for the complainant.

The equity jurisdiction is clear, springing from the contract, which is either a partnership or a trust. The case also involves either mistake or fraud in the settlement, which, on the statement of the defendant himself, needs to be reformed. And there exists still another ground in the necessity for a discovery.

The question of dissolution is one of discretion, and there are many exceptions to the rule which dissolves upon a denial by the answer. 1 *Sm. Ch. Pr.*, 587 *note* 6, also 600-1 *note c* ; again, it is not right to dissolve the injunction here, because that would dispose of the case. *Church vs. Legeyt*, 1 *Price*, 301 ; *Eden on Inj.*, 146.

The application is defective as being to dissolve the injunction in part ; it must be dissolved altogether, or stand as a whole. *Hoffman vs. Livingston*, 1 *Johns. Ch.*, 211.

The answer does not deny the equity of the bill. Even with respect to the contract, his denial is, that "he "signed, knowing the contents thereof." If he signed, he is presumed to have known, and denial of knowledge is not sufficient without some facts shewn to the contrary, to establish duress, fraud, or the like. The form of statement is a mere conclusion, without setting forth the facts which would excuse the want of knowledge. · The denial, therefore, rests upon mere opinion of defendant, which is insufficient. 1 *Bland*, 335.

The admission includes the original contract, the settlement and the due bill, and alleges fraud in obtaining the contract, and mistake in the settlement, and, that nothing is due. This is matter of avoidance, admitting a case of equitable jurisdiction. A substantive, distinct defense must be pleaded. *Minturn vs. Seymour* 4 *Johns. Ch.*, 497.

To dissolve the injunction is to remit us to the court of law, and to deprive us wholly of our equitable defense. A trust is involved here which would not be cognizable at law.   1 *Sto. Eq. Jur.*, secs. 29-32.

THE CHANCELLOR :

This bill is filed to restrain the further prosecution of two suits at law brought by the defendant, Dillon, against the complainant, Plunkett, one being an action of assumpsit on the common counts, to recover a balance, alleged to be due from Plunkett to Dillon upon settlement of sundry transactions, the other being an action for damages resulting from the entry and lien of a judgment for $3000, still unsatisfied on the record, which Dillon alleges to have been entered fraudulently upon a bond, which, at the date of the entry of judgment, was fully paid.   The answer also alleges that the bond was void, originally, for usury.

The equity of the complainant to be relieved against the action upon the common counts, as set forth in the bill is, that Dillon's claim, disclosed in the bill of particulars filed in that action, arose out of partnership transactions, which are cognizable only in a court of equity ; that, upon a fair and full accounting and settlement between the parties, in this Court, Dillon will be found indebted to him ; in corroboration of which statement, the complainant exhibits what he claims to be an account stated between them on the 25th of June, 1869, of their transactions to that date, including the debt secured by this bond, and showing, on its face, a balance, then due to Plunkett, of $334.17, for this balance Dillon gave his due bill, which is yet unpaid.  The bill specifies sundry errors in the account, alleging that were it opened and re-settled, a still larger sum would be found due to him.   The bill further states that the complainant cannot safely go to trial at law without a discovery of some of these transactions by

Dillon, there being no evidence of them ; and the interference of a court of equity is claimed, both on account of the partnership relations of the parties, and for the purpose of obtaining a discovery. With respect to the action for damages by reason of the alleged fraudulent judgment for $3000, the bill claims that the same has not yet been fully paid, and invokes this Court to withdraw the controversy into its jurisdiction, because, as is alleged, the bond on which the judgment has been entered was given for advances made by Plunkett to the partnership to be repaid out of the profits of the business that, therefore, the question of payment depends upon the result of a partnership account to be taken in this Court. These are, in substance, the grounds of equity relied on by the complainant.

The defendant, by his answer, without admitting the alleged partnership, nevertheless does not resist the injunction so far as it restrains the action upon the common counts ; and he submits to an account and settlement in this Court of all outstanding claims between the parties. But, with respect to the action for damages, the defendant moves for an order to dismiss the bill, and to dissolve the injunction. The motion is argued, (1) upon the want of equity on the face of the bill, and (2) upon the denial by the answer of those allegations upon which the complainant rests his equity.

1st. As to the equity of the bill—I am still of the opinion formed when the injunction was ordered, that the bill, on its face, entitles the complainant to protection against a trial at law of the question whether the bond for $3,000 had been paid. The equity to this relief rests upon the allegation made, in effect, that the bond was given, not for a loan from *Plunkett to Dillon*, but in order *to secure an advance for the purchase of real estate on the partnership account, and to be repaid only out of the proceeds of the real estate.* The theory of the bill is, that

64

inasmuch as Dillon was to hold the title to the real estate, and to receive and control the proceeds of it, the bond was given as a security for the re-imbursement of Plunkett's advance out of the proceeds, as they should come to Dillon's hands. Upon the case thus made, Dillon's responsibility under the bond was either as a co-partner, which is according to the construction of the contract given by the bill, or, at least, his responsibility as trustee ; in either of which capacities he is accountable only in a court of equity. Now, Dillon's suit for damages against Plunkett for keeping open the judgment, proceeds upon the ground that the bond has been fully paid. Plunkett's defence is, that a balance remains unpaid for which Dillon is liable, on account of sufficient proceeds having been received by him, and with which he is chargeable, under the contract, either as a co-partner, or as a trustee, it matters not which. Such a defense is an equitable one ; and hence I felt justified, taking the case to be as alleged in the bill, in withdrawing the controversy into this Court.

It is true, from all that appears, Plunkett need not have resorted to this equitable defense,—but might have stood his ground at law. For, on the suit at law, the bond would have been treated as Dillon's absolute debt, and he would have been held to proof of full payment, in order to sustain the suit. Nevertheless, if the bond was, in fact, given to carry into effect transactions cognizable in this Court, as we must assume, while considering the sufficiency of the bill on its face, that consideration entitles the complainant to relief here.

It would be otherwise did the question of payment depend upon a transaction cognizable in a court of law ; as if the case made by the bill, were the ordinary one of a judgment recovered for an individual debt, and the questions were whether it had been paid, the fact of payment to be shown by the usual evidence of receipts, admissions, &c. In such a case the question of payment

can be as well tried at law, and no ground exists for withdrawing it into this jurisdiction. It was very much urged in argument, and so the answer alleges, that this bond was given for a loan to Dillon, and was payable as an ordinary debt, no question of partnership or trust being involved. But whichever may have been the real transaction between these parties, I must, at this point, assume that it was what the bill alleges; for we are considering only the equity of the bill on its face.

A distinct ground upon which the equity of the bill was controverted in argument was, that the contract alleged was, on its face, a cover for usury under the guise of a partnership. I cannot so read it. The feature which saves it from the taint of usury is that, according to its terms, Plunkett is liable, in all events, for a share of the losses, and, therefore, his principal is at risk, *i. e.*, the risk of the adventure and not of Dillon's solvency, merely. This clearly distinguishes it from the authorities cited from *Cowp.* 793 ; 4 *T. R.* 353 ; 2 *Parsons on Cont.* 420. The terms are grossly unequal for a partnership, and open to suspicion of usury ; but the transaction is asserted to be a partnership, and no usury appearing on its face, we cannot assume it at this stage of the case.

Another ground taken in support of the motion to dissolve, for want of equity in the bill, was that, even admitting the contract to be as alleged, still the account annexed to the bill, and relied on by the complainant as showing a balance of $334.17, due him on 28 June, 1869, would, if corrected, show a large balance in favor of the defendant, after the full payment, the judgment being included in the account. One very gross error is pointed out—Dillon is charged $2,656, as the full proceeds of 166 feet of land sold, and is credited $409.33 as his share (one third) of profits on the same sale, whereas, according to the contract relied on in the bill, Dillon was chargeable with nothing arising out of this transaction except

Plunkett's share (two thirds) of the profits, which share, taking the cost of the land per foot, and the proceeds of sale to be as shown in the bill and account, was $885.34. Here, even taking the contract as alleged by the bill, is an overcharge against Dillon of $1,361.33, the correction which would far more than sink the balance in Plunkett's favor upon the account as it now stands. Other errors also are alleged. But with respect to them all, it is enough now to say that the bill charged this to be a settlement between these parties, mutually agreed upon, with a balance struck and accepted by Dillon as correct, even to the extent of his giving his due-bill for it. It is competent for the defendant to deny by answer that he was a party to any such settlement, and if, on such an issue, he is sustained, the account goes for nothing. So, even, if he were a party to it, he may, by a cross-bill, have it reformed for error. But in considering the equity of the bill upon a motion to dissolve the injunction, I must take this transaction to be as the bill alleges it, *i. e.*, a settlement to date and, while so treated, as being obligatory on the parties.

2d. I next proceed to consider the motion, so far as it is supported by the denial of the answer.

The answer denies the existence of any partnership, and insists that the bond was given for money loaned to Dillon, to be repaid at all events; it positively alleges that the bond has been fully paid; more than this, that it was paid prior to the entry of the judgment. The giving of the due-bill on the 28th, June, 1869, for $334.17, as a balance then due to Plunkett, is admitted; but it is denied that this was a balance struck upon a settlement mutually made upon investigation. The due-bill was given, as the answer alleges, in order to satisfy a demand on the part of Plunkett, and on his representation, in which Dillon then had confidence, that there was such a balance due Plunkett. The answer states that the account appended

to the bill, as showing a settlement on the 28 June 1869, and a balance of $334.17, then due to Plunkett, was made out by himself without Dillon's knowledge ; that after it was made and the due-bill given, sundry gross errors in it were discovered by Dillon, which are set forth in the answer ; that the correction of these would shift the balance largely in Dillon's favor, after fully paying the bond and all other just claims of Plunkett. No question of usury is raised by the answer.

The answer directly traverses the bill in its two material allegations, viz : that the bond was given for a partnership advance, and that there is a balance still unpaid upon it. If the case, as left by the answer, raised only the question whether a judgment, legally entered, has since been paid, I should dissolve the injunction, and remit the parties to the action at law, considering that the simple question of payment, as before suggested, could be as well tried at law as here. But the case made by the answer, as well as that of the bill, is one cognizable only in equity, and the effect of dissolving the injunction would be to send the parties out of this Court only to return again upon a bill to be filed by Dillon, for a decree declaring the judgment void, preparatory to the further prosecution of this action for damages. It will be observed that, upon the case made by the answer, Plunkett is chargeable. in damages, not for neglect to enter satisfaction pursuant to the statute, of a judgment originally valid but paid since it was entered, but for having fraudently caused the entry of a judgment upon a bond which, it is alleged, had been paid before the judgment was entered. Now, a judgment cannot be impeached collaterally, but only by a direct proceeding to vacate it or set it aside. Such a proceeding may be taken either in the court where the judgment was entered, under the equitable jurisdiction which every court exercises over its own records ; or it may be by a bill in equity in this Court. The Superior Court has heretofore declined, except in very simple cases, to enter-

tain applications to vacate judgments, deeming the proceeding by bill to be generally a better mode of investigation. It is certain that the Superior Court would not, in the action for damages, allow the judgment to be impeached by evidence of payment prior to the entry of the judgment ; and it is doubtful whether that court would entertain an application to its equity jurisdiction to vacate the judgment upon grounds requiring the investigation of numerous transactions and matters of account. Considering, then, that the whole controversy must be adjudged in this Court as well as with respect to the validity of the judgment upon the questions of usury and payment, as with respect to the balance upon a final accounting between the parties, the better course will be to continue the injunction, and put the cause in such condition as will bring the validity of the judgment to an early decision. This is proper in order that if fraudulently entered and kept on foot, Dillon may be relieved from it as soon as possible. It will be necessary that Dillon file a cross-bill, alleging his objections to the judgment, and praying that Plunkett be perpetually enjoined from collecting it. Should such a decree be obtained, the injunction now pending will be dissolved, leaving Dillon free to seek his redress at law in damages. For another purpose, also, the cross-bill might become necessary ; that is, to enable the Court to reform the account of June 28th, 1869, and to decree, in Dillon's favor, any balance which may be found due to him on the final settlement. While the case stands upon Plunkett's bill only, no decree can be made in favor of Dillon beyond dismissing the present bill, even though the proof might show a balance due to Dillon. The Court can deal fully and effectually with the whole controversy only by means of a cross-bill, embracing the object of both of Dillon's suits at law. It should seek (1) relief from the judgment, and (2) an account and settlement of all transactions between the parties, setting forth, for the latter object, a full statement of Dillon's claim, and praying a decree in his favor for any balance which may be found due to him.

Let an order be entered that the defendant file a cross-bill in this cause by the first day of June next ; that the present complainant answer the cross-bill within twenty days after the same shall be filed ; and that, upon the filing of the answer, the complainant in the cross-bill have ten days to except.   This will enable either party to bring the cause to issue by the first of July, and to a hearing at the September Term.

The injunction will stand continued, so far as concerns this action for damages, No. 143, to May Term 1870, to which action the motion applies.   I observe, however, a clause in the injunction which gives it too large an operation.   In its terms, it restrains the defendant from commencing in any other court, pending this suit, any suit, action or plaint against this complainant, touching, concerning, connected with, or arising out of, the matters stated in the bill.   The objection to this is, that it leaves open the question whether a suit, which might be hereafter brought, does or does not arise out of the matter stated in this bill.   The injunction under this clause has not the requisite certainty.   It should operate upon subject-matters so specific, that the party restrained may certainly know what he is forbidden to do.   On the other hand, so general a clause is not necessary for the complainant's protection ; for after any suit brought to the prejudice of his remedy here, he can at once apply to have the injunction extended.   I shall, therefore, order the injunction to be amended by striking out that clause.