JOHN PIERPONT MORGAN, WILLIAM P. HAMILTON, HERBERT L.
    SATTERLEE and LEWIS C. LEDYARD, Executors of JOHN PIER-
    PONT MORGAN, deceased, vs. JAMES A. OWNBEY.

1. BAIL—FOREIGN ATTACHMENT—RIGHT TO ANSWER—REQUIREMENT OF
    SPECIAL BAIL.

    Under the Delaware statutes relating to foreign attachment, where
plaintiffs, in suit against an individual, attached shares of stock of a domestic
corporation, with direction to the sheriff, indorsed on the writ, that he summon
the corporation as garnishee and demand bail in the sum of $200,000, the
defendant, although plaintiffs filed a declaration in the suit, could not appear
and contest the merits of plaintiffs' claim without entering the special bail
demanded, notwithstanding such shares constituted defendant's entire prop-
erty and had been deprived of all market value by suit in another jurisdiction,
rendering him financially unable to furnish such amount of bail, for his entry
of appearance without such bail, if allowed would destroy the lien and advan-
tage of the attachment by changing the action from one in *rem* to one in
*personam* and making any judgment recovered by plaintiffs a general judg-
ment.

2. ATTACHMENT—CORPORATE STOCK.

    Under *Rev. Code* 1915, § 2009, providing that the shares of any person in
any incorporated company, with all the rights thereunto belonging, may be
attached for debt, and section 1896, providing that for all purposes of attach-
ment the situs of the ownership of capital stock of all domestic corporations
shall be regarded as in the state, in a foreign attachment suit attachment
may be made of the stock of a domestic corporation by an officer of the com-
pany giving to the sheriff a certificate of the number of shares held by the
debtor in such company, and in such case, the corporation itself not being
summoned as garnishee, it is not necessary that it be doing business in the
state under *Section* 4120, as to attachment and garnishment.

3. BAIL—CONSTITUTIONAL LAW—DUE PROCESS—FOREIGN ATTACHMENT—
    STATUTE.

    The Delaware foreign attachment statutes, in denying defendant any
right to appear upon attachment thereunder without entering special bail,
are not in conflict with *Const. U. S. Amend.* 14, as being arbitrary or unrea-
sonable, nor a deprivation of property without due process of law, though
plaintiff, by demanding special bail greater than defendant's financial ability
to furnish, may prevent defendant from appearing in the suit at all before
judgment is entered against him.

4. BAIL—CONSTITUTIONAL LAW—EQUAL PROTECTION OF THE LAWS.

    Nor are such statutes unconstitutional in making an arbitrary, unrea-
sonable or illegal classification of the persons affected by them and denying
them the equal protection of the laws, contrary to *Const. U. S. Amend.* 14, in
that special bail before answering, is required in foreign attachment suits, as
a condition to appearing, only from individual defendants, and not from cor-
poration defendants.

5. JUDGMENT—OPENING—RULE TO SHOW CAUSE.

    A rule to show cause why judgment should not be opened may properly
be served upon plaintiff's counsel, where plaintiff's absence from the state
precludes service on them.

Statement.

6. ATTACHMENT—JUDGMENT—OPENING IN FOREIGN ATTACHMENT SUIT.

Notwithstanding the court's inherent power to open a judgment, if convinced that it would be in the furtherance of justice to do so, judgment in a foreign attachment suit against an individual will not be opened merely because defendant has been prevented from appearing and contesting on the merits by his financial inability to furnish the amount of special bail demanded, where he had knowledge of the attachment from the time it was made, and the only excuse he could give for failing to appear was that it was impossible for him to furnish security in the large amount demanded.

(*November 27*, 1916.)

PENNEWILL, C. J., and BOYCE, J., sitting.
*Saulsbury*, *Morris* and *Rodney* for plaintiffs.
*Ward*, *Gray* and *Neary* for defendant.
Superior Court, New Castle County, March Term, 1916.

FOREIGN ATTACHMENT, No. 46, January Term, 1916.
Argued before PENNEWILL, C. J., BOYCE, CONRAD, RICE and HEISEL, JJ., in Court in Banc.

Action by foreign attachment in the Superior Court by John Pierpont Morgan, William P. Hamilton, Herbert L. Satterlee and Lewis C. Ledyard, executors of John Pierpont Morgan, deceased, against James A. Ownbey. Entry of appearance by attorneys for defendant on the appearance docket, etc., as in ordinary actions, without giving security required by statute. Motion to strike off. Granted. Judgment for want of appearance at the second (March) term, amount to be ascertained by inquisition at bar. Motion to open judgment and permit defendant to appear and disprove claim of plaintiffs, without giving security. Denied. Final judgment obtained by inquisition at bar, at the subsequent (May) term. Motion to open final judgment, and permit defendant to appear without security and disprove or avoid the debt or claim of plaintiffs. Denied.

These several motions, in turn, were, without prejudice to plaintiffs, first heard by the Court in Banc.

The writ of foreign attachment was issued upon affidavit required by the statute, with direction to the sheriff, indorsed on the writ, that he summon as garnishee the Wooten Land and Fuel Company, and demand bail in the sum of two hundred thousand

dollars. The sheriff made due return of the writ that he attached all the shares of the capital stock of James A. Ownbey in the Wooten Land and Fuel Company, a corporation of the State of Delaware, with all the rights thereunto belonging, and left a copy of the process with certain directors of the company and received from the same a certificate, made part of the return, showing the number of shares held or owned by the defendant to be thirty-three thousand three hundred and twenty-four and one-third.

On the first rule day plaintiffs filed a declaration on the common counts, without bill of particulars, with copy, and ruled pleas by first general rule day thereafter.

Ward, Gray and Neary, attorneys for defendant, for the purpose of entering an appearance for defendant, wrote their names on the appearance docket as in ordinary cases, and on the same day filed pleas with the Prothonotary, who marked the same "Filed," and made the following entry in the appearance docket:

"March 2, 1916. Defendant pleads, with copy, non assumpsit, statute of limitations, payment. Rule reps. and issues by second rule day in March."

On March 13, 1916, the attorneys for the plaintiffs presented a written motion to the court, asking that the appearance and the entry so made be stricken off, and that the pleas be stricken from the files of the court, for the reason that security required by the statute had not been given.

On March 14, 1916, at the request of the attorneys for defendant, the time for the argument of the motion was enlarged; and on March twenty-first they filed with the Prothonotary another paper in the nature of an answer to the motion, which after reciting the docket entries is as follows:

"3. The said Wooten Land and Fuel Company, while a corporation of the State of Delaware, is engaged in coal mining and all other of its activities and business in the states of Colorado and New Mexico, where it has much and valuable property, and is not and never has been engaged in business in the State of Delaware.

"4. That James A. Ownbey is a resident of the State of Colorado and that the stock in the said the Wooten Land and Fuel Company, which has been attached in this case, constitutes substantially all of his property, assets and estate.

"5. That a suit was instituted in the United States District Court for the District of Colorado in the month of February, 1915, by the plaintiffs in

this cause and Francis H. McKnight, a person under the control of the said executors of John Pierpont Morgan, deceased, against the said the Wooten Land and Fuel Company, this defendant and other persons, praying for an accounting by this defendant, who had been the General Manager of said Wooten Land and Fuel Company, and the appointment of a receiver for said company. And in said cause a recevier for said company was duly appointed and certain matters therein referred to a master to take testimony. That the master is still engaged in taking testimony in said cause and the receiver so appointed is now in possession and control of the property of the said the Wooten Land and Fuel Company. That by reason of the premises the market value of the shares of said company owned by this defendant and attached as aforesaid has been temporarily destroyed, although in fact of great value, so that the defendant has found said shares unavailable to assist him in securing the required bail or security to procure the discharge of said shares from said attachment.

"6.    That by reason of the premises, the defendant has found it impossible and avers it is impossible to secure bail or security in the said sum of two hundred thousand dollars ($200,000), or in any adequate sum for the release of his shares in said Wooten Land and Fuel Company, attached in this case.

"7.    That the defendant in the above stated case has a good defense to the whole of any cause of action stated in said suit, the nature of which defense is that there exists no indebtedness upon any account or for any sum or sums of money whatsoever, due to said plaintiffs or their decedent, the said John Pierpont Morgan, from said defendant either at this time or at the time said suit was instituted.

"8.    That the said writ of foreign attachment, issued as original process in said cause, is a process existing under and defined and limited by the statutes of the State of Delaware, in that behalf. That said statutes, upon due interpretation or construction thereof, provide:

"a.    That entry of the bail or security for the discharge of the property seized under such writ of foreign attachment is not a necessary prerequisite for the entry of appearance by the defendant in such writ.

"b.    That the entry of appearance by the defendant in the said writ may be made without disturbing the seizure of property thereunder or its security for any judgment finally entered in this suit.

"c.    That the purpose of the writ of foreign attachment is two-fold, to wit:   To compel the appearance of the defendant in the cause and to devote or apply the value of the property attached to the judgment, if any, obtained in the suit begun by such process.

"d.    Where, in any case, appearance has been entered by the defendant, and pleas filed, no judgment can be   entered until the trial of the issue so raised in said cause.

"9.    If the statutes of the State of Delaware, relating to foreign attachment, cannot duly be construed so as to permit appearance and defense, in case of a cause begun by foreign attachment, without the entry of bail or security for the discharge of the property seized under such writ, such statutes are unconstitutional under the first section of the fourteenth amendment of the *Constitution of the United States*, in that:

"a.    Such statutes are laws abridging the privilege and immunities of citizens of the United States.

"b.    Such statutes deprive parties defendant in cases brought thereunder of property without due process of law.

"c.    Such statutes deny such defendants the equal protection of the laws.

"10.    To require the defendant in this cause to give bond in the sum of

two hundred thousand dollars or in any sum adequate to secure the payment of the amount of monies claimed by plaintiff therein, or to procure the dissolution of said attachment and the release therefrom of the shares of stock so attached, as a condition precedent to the allowance, of an appearance and entry of pleas in bar, in said cause, by said defendant, is oppressive, unreasonable and in violation of fundamental principles for the administration of justice."

The Prothonotary marked the same "Filed," and made the following entry in the appearance docket:

"March 21, 1916.   Reply to plaintiff's motion to strike appearance and defence filed."

On March 27, 1916, attorneys for plaintiffs filed a further written motion to the effect that the entry so made in the appearance docket be stricken off; that the paper writing containing reply to plaintiff's first motion be stricken from the files, for the reason that security required by the statute had not been given; and on the same day, they also filed another written motion, viz.:

" * * * It appearing that * * * the defendant has not entered special bail, * * * the * * * plaintiffs, by * * * their attorneys, move, at this the second term after issuing the writ, for judgment, collectible from the property attached, pursuant to *Sections* 20 and 28, *Chapter* 126, being *Sections* 4137 and 4145 of the *Revised Code*, 1915.

"And further, that the amount of said judgment be ascertained by inquisition at bar."

The Superior Court, considering that the questions of law raised by the motions ought to be heard by the Court in Banc, did, upon the joint application of the parties, without prejudice to the plaintiffs, direct the same to be so heard.

Accordingly the motions came on to be heard by the Court in Banc.

### ARGUMENT FOR PLAINTIFFS.

In foreign attachments under the Delaware statute a common appearance cannot be entered and the defendant cannot appear and defend without entering special bail. *Section* 4137, *Revised Code of* 1915; *Section* 4123, *Id., Reybold v. Parker*, 6 *Houst.* 544.

The Act passed in 1770 (*Rev. Laws* 1829, *p.* 46) is with very

few changes the act of today. Parts of *Sections* 3, 10 and 16 thereof cited; also, "A supplement to an Act entitled 'An Act directing the manner of suing out attachments within this government.'" *Section* 3, *p.* 52, *Code* (1829); also "An additional supplement (1823) to the Act, etc., *Code* (1829) *p.* 52; *Woolley on Del. Prac.* §§ 1291, 1292, and 1258.

So far as is known, no attempt has ever before been made under the Act of 1770, and the amendments thereto, to enter appearance otherwise than by special bail. The language of the court in *Penna. Steel Co. v. N. J. S. R. R. Co.*, 4 *Houst.* 572, 578, is applicable. *Wells v. Shreve's Adm'r*, 2 *Houst.* 329, 369; *Frankel v. Satterfield*, 9 *Houst.* 201, 209, 19 *Atl.* 898; *National Bank of W. & B. v. Furtick*, 2 *Marv.* 35, 51, 42 *Atl.* 479, 44 *L. R. A.* 115, 69 *Am. St. Rep.* 99.

"A foreign attachment is only a process to compel an appearance, and is dissolved by the defendant's entering such appearance, by putting in special bail to the suit." *Serg. on For. Attch.* 6.

"This judgment against the defendant can only be a judgment by default, for want of appearance by him, that is by entering special bail." *Id.* 20.

"When appearance is effected by special bail being put in, the suit proceeds as in ordinary cases. *Id.* 130, 135.

In *Fowler v. Dickson* and *Tweeddale*, 1 *Boyce*, 113, 119, 74 *Atl.* 601, 603, in speaking of the proceeding of foreign attachment, our court said:

"It had its origin in the custom of London."

See also 1 *Am. & Eng. Ency. of Law*, 894 (1 *Ed.*); *Drake on Attach.* § 5.

The defendant, as under the custom of London, is not allowed to plead to the action until he has given the required security. *Id.* § 312; 4 *Cyc.* 816.

To the like effect is *Andrews v. Clarke, Carthew*, 25, 1690; *Bacon's Abridgment*, 51, under "*Customs of London*, H. 1"; also *Com. Dig.* under "*Attachment E.*"; also *McClenachan v. McCarty*, 1 *Dall.* 375, 1 *L. Ed.* 183; also *Callender & Co. v. Duncan*, 2 *Bailey* (*S. C.*) 454, in which the defendant, without objection of plaintiff, appeared and pleaded to the action without putting in special bail.

In *Vann v. Frederick*, 2 *Bailey* (*S. C.*) 303, it was held that the wife of the absent defendant in attachment cannot appear and plead to the declaration.

In *Alexander v. Taylor*, 62 *N. C.* 36, it was held the debtor in an attachment suit in equity has no status in court until he has appeared and replevied in accordance with the twenty-fifth *Section of Rev. Code, Chapter* 7. See also *Watson v. Noblett*, 65 *N. J. Law* 506, 47 *Atl.* 438; *Garrett v. Tinnen*, 8 *Miss.* (7 *How.*) 465; *Campbell v. Morris*, 3 *Har. & McH.* (*Md.*) 535.

The defendant is in the same situation he would have been in if taken on a *capias ad respondendum. Cunningham's Dict.* under "Appearance," printed in 1771.

"Appearance in such case is effected by putting in and justifying bail to the action; which is commonly called putting in bail above." 3 *Black's. Com.* 290, 291; also *Highmore on Bail* 37, published about 1783; 1 *Sellon's Practice*, 137; *Dashwood v. Folks*, 3 *Levinz* *343.

"Appearance is necessary in all cases, because the defendant must be in court before his attorney can plead, or take any steps on his behalf, or plaintiff can proceed against him, except by declaring *de bene esse.*" 1 *Sel. Proc.* 91; also *Highmore on Bail* 41, and 1 *Tidd's Prac.* 465; *Ven v. Calvert*, 4*Tr. Rep.* 578; *Saunders v. Owen*, 2 *Dowling & Ryland* 252; *Mayor and Commonalty v. Cooke et al.*, 1 *Cranch, C. C.* 160, 16 *Fed. Cas.* 1268, No. 9358; *Voss v. Tuel*, 1 *Cranch, C. C.* 72, 28 *Fed. Cas.* 1305, No. 17015; *Wager v. Lear*, 2 *Cranch, C. C.* 92, 28 *Fed. Cas.* 1324, No. 17,034.

From the authorities, it follows that the defendant has neither appeared nor pleaded.

It is contended that the courts in this state have three several times permitted the defendant, after judgment in foreign attachment cases, to open the judgment and be heard in disproving the debt without giving bail. *Taylor v. Rossiter*, 6 *Houst.* 485; *In re Levy*, 3 *Pennewill*, 5, 50 *Atl.* 540; In *re Warthman*, 4 *Pennewill* 319, 55 *Atl.* 6.

In this connection, it is important to consider *Section* 4089. *Revised Code*, which is as follows:

"If the defendant in a writ of summons, shall not appear at the return day thereof, and it shall appear by the return that he was duly summoned, it shall be lawful for the plaintiff, having filed his declaration, to take judgment thereon for default of appearance, according to the rules and practice of the court.

"But if the defendant shall, at or before the next term after such judgment, by affidavit deny notice, or knowledge, of such suit before the judg-

ment was rendered, and shall allege that there is a just, or legal, defense to the action, or some part thereof, such judgment shall be taken off and he shall be permitted to appear; any execution which may have been issued thereon to remain cautionary."

It will be observed that the petitions in two of the cases last cited conform strictly to the requirements of this section of the *Code*, which, it is respectfully submitted, can have no application to the law of attachments, for the reason that it applies to summons cases, yet the court did in *Taylor v. Rossiter*, followed in *In re Warthman*, probably by analogy, apply the practice to the defendants therein. *In re Levy*, 3 *Pennewill* 5, 50 *Atl.* 540, shows the uncertainty and lack of sound basis for the practice.

Remedy by attachment must be pursued in conformity with the terms of the law conferring it. *Drake on Attach.* § 4a; *Reynolds v. Howell*, 1 *Marv.* 52, 59, 60, 31 *Atl.* 875; *Penna. Steel Co. v. N. J. S. R. R. Co.*, 4 *Houst.* 572, 578.

If the defendant be permitted to appear and defend in the manner attempted, without giving special bail, the plaintiffs would probably be prevented from obtaining judgment binding upon the goods attached under the statute at the second term. Any judgment, subsequently rendered, is not authorized by the statute, unless it be a judgment in *personam* in case the attachment has been dissolved. See *Reynolds v. Howell*, 1 *Marv.* 60, 31 *Atl.* 875.

Under *Section* 4145, *Rev. Code* 1915, the plaintiff after judgment may proceed by order of sale, *fieri facias, capias ad satisfaciendum*, or otherwise, as on other judgments. If judgment be obtained under *Section* 4137, *Rev. Code* 1915, then the procedure is by order of sale only. Whe Trit of *fi. fa.*, of course is applicable where the defendant appears by putting in special bail and the judgment thereon is a personal judgment. If the defendant be permitted to appear and defend without giving special bail further proceedings by the plaintiffs would be wholly nugatory. *Woolley on Del. Prac.* § 1297.

It is contended that *Section* 4120, *Rev. Code* 1915, which provides in part:

"All corporations doing business in this state, except banks, saving

institutions and loan associations, are subject to the operation of the attachment laws of the State of Delaware, as provided in the case of individuals   *   *   *"

—should be construed with, and is operative upon *Sections* 2009 and 2013 inclusive, and that this would prevent the attachment of shares of stock of any company not doing business in this state. This contention is faulty in that it overlooks *Section* 1986 which is:

"For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this state, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this state, whether organized under this chapter or otherwise, shall be regarded as in this state."

—and also overlooks the decision in *Fowler v. Dickson & Tweeddale*, 1 *Boyce*, 113, 74 *Atl.* 601, where a similar contention was disposed of.

It is also contended that *Section* 4143, *Rev. Code* 1915, which provides for a proceeding in attachments against foreign corporations different from the proceedings against individuals, renders the proceedings against individuals void in that there is no reasonable basis for a separate classification.

A complete answer to this is contained in *Vogle v. New Granada Canal Co.*, 1 *Houst.* 295, where the court held that a corporation was not subject to foreign attachment, which resulted in the passage of the statute embodied in *Section* 4143, *Rev. Code* 1915.

A statute requiring that appearance be entered by putting in special bail does not conflict with the Fourteenth Amendment of the *Constitution of the United States*.

The validity of the challenge of the constitutionality of our attachment statute depends wholly upon whether the requirement that special bail must be given as a prerequisite to appearance and defense violates the "due process of law" clause of the Fourteenth Amendment.

"Due process of law" under the Federal Constitution, since it is not defined in the *Constitution*, means "the law of the land" as used in the Magna Charta, and to ascertain what is "the law of the land" we must look to those settled usages and modes of

proceeding existing in the common and statute law of England, before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country. *Murray v. Hoboken Land & Improvement Co.*, 18 *How.* 272, 15 *L. Ed.* 372.

The "due process" clause of the Fifth Amendment applies only to the nation, while the "due process" clause in the Fourteenth Amendment applies only to the states. *Tracy v. Ginzberg*, 205 *U. S.* 170–178, 27 *Sup. Ct.* 461, 51 *L. Ed.* 755.

The case of *Pennoyer v. Neff*, 95 *U. S.* 714, 722, 24 *L. Ed.* 565, has been said to be a landmark in the law of attachments. The court held that a proceeding by attachment was substantially a proceeding *in rem.* See also *Central Loan & Trust Co. v. Campbell*, 173 *U. S.* 84, 97, 19 *Sup. Ct.* 346, 43 *L. Ed.* 623; *Light v. Canadian County Bank*, 1 *Okl.* 543, 37 *Pac.* 1075.

Distress for rent is an ancient common law procedure, which is still in force in this state.

The constitutionality of proceedings by distress for rent is considered in *Anderson v. Henry*, 45 *W. Va.* 319, 31 *S. E.* 998.

The requirement of special bail is not unknown to the laws of the United States. *Section* 942 of the *Revised Statutes* (*U. S. Comp. St.* 1913, § 1568), passed about 1799.

*Section* 29, *Judicial Code of the United States* (Act March 3, 1911, c. 231, 36 *Stat.* 1095 [*U. S. Comp. St.* 1913, § 1011]), pertaining to the removal of causes, provides for the defendant "entering special bail in such suit if special bail was originally requisite therein," from which it must be assumed that failure to give special bail as therein required would be accompanied by all the common law disabilities for so doing. See *Cooley's Const. Lim.* 440, *note* 2 (*4th Ed.*) for "what is meant by 'the law of the land.'"

The requirement of security for the payment of the judgment of the court is not in violation of the *Constitution of the United States*. *Capital Traction Co. v. Hof*, 174 *U. S.* 1, 43–46, 19 *Sup. Ct.* 580, 43 *L. Ed.* 873.

The right to appear and defend and the right to a trial by jury, both being rights under the *Constitution of the United States*,

Arguments.

if the giving of security may be made a pre-requisite to the enjoyment of one, there is no reason why it may not be made a like prerequisite to the enjoyment of the other.

All the foregoing is without considering *Section* 4135, *Rev. Code* 1915, which is:

> "Provided, that before any creditor shall receive any dividend, or share, so distributed, he shall, with sufficient surety, enter into recognizance to the debtor, before the Prothonotary, in a sufficient sum, to secure the repayment of the same or any part thereof, if the said debtor shall, within one year thereafter, appear in the said court and disprove or avoid such debt, or such part thereof.
>
> "The proceeding for this purpose may be by motion to the court, and an issue framed and tried before the same."

Under this section the defendant is fully protected and has an opportunity to be heard and defend even without special bail, which removes all question as to the constitutionality of our attachment laws.

The cases presented to the court in opposition to the validity of our attachment law seem to be completely disposed of by *Cooley's Const. Remedies*, \*354, where he says:

> "When the law of the land is spoken of, undoubtedly a pre-existing rule of conduct" is intended, "not an *ex post facto rescript* or decree made for the occasion."

### ARGUMENT FOR DEFENDANT.

All attachments under the custom of London are grounded on actions of debt, under which are included not only actions of debt for money, but detinue for a specific article in certain cases. *Serg. on For. Att.* 53; *Bohun, Privileges of London*, 254.

The proceeding was to summon the defendant to appear at the same or the next court at the Guildhall to answer the plaintiff of and in the plea, and is stated in *Bohun, Privileges of London*, 286, 287; *Serg. on For. Attach.* 228, 229, 230; *Locke on For. Att.* \*3.

Under the custom as it existed during our colonial period (1) the defendant could either render his body to prison or give security to pay the debt demanded; (2) he could then bring a writ of *scire facias*, called *scire facias ad disprobandum debitum*,

to put the plaintiff on the proof of his claim; (3) if the debt was not due by bond, bill or specialty the defendant might wage his law, and thereupon discharge himself of the money demanded by the plaintiff; (4) after judgment obtained by default of the defendant, and before execution was awarded, the plaintiff was bound to find sureties and give bond that, if the defendant on the attachment, within a year and a day, should come into court and disprove or avoid the debt demanded against him by the plaintiff, the plaintiff would restore to the defendant the money-condemned in the garnishee's hands; (5) the plaintiff was compelled to give a second bond to prosecute his original bill; (6) the plaintiff also swore positively and definitely to the amount of his claim, and such affidavit constituted the foundation of this action; (7) the custom of London involved garnishment under which only money was attached; the bond therefor to return moneys realized under the custom was a complete indemnity against loss, inasmuch as money only was concerned; and the bond was given before execution awarded instead of after a sale, as in the case at bar. Under the custom, it seems possible for the defendant to appear and contest the plaintiff's claim before execution becomes operative.

Under our foreign attachment statute not a single one of the seven safeguards above enumerated are present. The plaintiff does not even have to swear to his debt. Proof of the debt should be required. *Campbell v. Morris*, 3 *Harr. & McH.* (*Md.*) 535.

We believe a statute expressly debarring the defendant from the right to appear and be heard must be considered by the court as contravening the law of the land.

Tested by the cases of *Murray v. Hoboken Land & Improvement Co.*, 18 *How.* 182, 15 *L. Ed.* 372, *Tracy v. Ginzberg*, 205 *U. S.* 170, 178, 27 *Sup. Ct.* 461, 51 *L. Ed.* 755, and *Light v. Canadian County Bank*, 2 *Okl.* 543, 37 *Pac.* 1075, it is submitted that the plaintiff's contention as to the constituonality of the procedure in the case at bar necessarily falls.

The manner of proceeding to disprove the debt under the custom of London is stated in *Serg. on Att.* 48; *Bohun, Privileges of London*, 280.

For proceeding after judgment obtained by the plaintiff against the garnishee on any attachment, see *Serg. on Att.* 207; *Bohun, Privileges of London,* 256.

The primary object to be attained by the writ is that of compelling an appearance by a defendant who is out of the reach of process by summons or capias. *Blaney v. Randel,* 3 *Harr.* 546; *Belcher v. Grubb,* 4 *Harr.* 461; *Vogle v. New Granada Canal Co.,* 1 *Houst.* 294; *Geylin v. de Villeroi,* 2 *Houst.* 203; *Lutz v. Roberts Cotton Oil Co.,* 3 *Boyce,* 227, 232, 82 *Atl.* 601.

*Section* 4143, *Rev. Code* 1915, which provides a procedure in foreign attachments against *foreign corporations,* directs that the affidavit should state not only that the defendant was a foreign corporation, but that it "is justly indebted to the said plaintiff in a sum of money, *to be specified in said affidavit,* and which shall exceed fifty dollars."

*Section* 4142, *Rev. Code* 1915, in providing the alternative basis for the issuance of a foreign attachemnt upon a return upon a summons or capias showing that the defendant cannot be found, provides also that the plaintiff must furnish "proof, satisfactory to the court, of the cause of action." It may be that the intended meaning of this provision for the issuance of a foreign attachment upon affidavit is that such affidavit must show that the defendant "is justly indebted to the said plaintiff in a sum exceeding fifty dollars"; that is, that the real sum claimed to be due should "be specified in said affidavit." If such be the reasonable construction of the law, every legal right of the plaintiff could be safeguarded by the court, even in the case at bar, by permitting the defendant to put in bail in a sum not exceeding one hundred dollars and two cents, were it not for the requirement under *Section* 4123, *Rev. Code* 1915, that the defendant must enter security "to the value of the property, rights, credits and moneys attached, and the costs."

Construing *Section* 4142, providing for the issuance of foreign attachment upon affidavit, with the provisions of *Section* 4123, requiring security of the defendant to the value of the property, etc., our foreign attachment law would seem to authorize a plaintiff, upon an affidavit of an indebtedness of fifty dollars, to compel the defendant to enter security in any sum, before he could be permitted to appear and defend.

It is provided by *Section* 4123, *Id.*, that:

"If the defendant in the attachment, or any sufficient person for him, will, at any time before judgment appear and give security to the satisfaction of the plaintiff in such cause, or to the satisfaction of the court   *   *   *   to the value of the property, rights, credits and moneys attached, and the costs, then the garnishee and all property attached shall be discharged."

This is clearly a privilege given to the defendant by which he may substitute personal security for that of the detention of his goods, to abide the issue of the suit. *Section* 302, *Shinn on Att. & Garn.* 583, 584. It is true that *Section* 4137, *Rev. Code* 1915, provides that:

"Judgment shall be given for the plaintiff in the attachment the second term after issuing the writ, unless the defendant shall enter special bail, as aforesaid."

This provision is the crux of the situation, so far as the contention of counsel for the plaintiffs is concerned.

The contention of the plaintiff is that the defendant who is unable to procure security is precluded from the right to appear and defend a suit to which he has sworn he has a good defense. Have not the plaintiffs obtained all that they can in reason demand if the sheriff holds the property seized, to abide any judgment that may be obtained against the defendant?

If the defendant does not dissolve the attachment by entering security, the property attached remains in the custody of the sheriff, and, assuming that no appearance has been entered by the defendant before the last day of the second term, it is the privilege of the plaintiff to take a judgment of condemnation of the goods that have been attached. *Section* 4137, *Rev. Code* 1915. If an appearance is allowed and defense made, the judgment by default, provided by the latter provision, would not be entered, for the reason that there would be no default. Instead of a judgment by default, there would be a trial of the cause, and if the plaintiff proved his debt or claim, judgment would be finally entered in his favor. The theory and condition of such a judgment and its validity and the preservation of the lien under the attachment, are fully explained, in 1 *Shinn on Attach. and Gar.* § 323, *page* 619, 620.

The status of the attachment lien after a general judgment against the defendant is fully set out in *Section 323, 1 Shinn,* 619, 620. The purpose of the writ under the present prevailing practice in attachment proceedings is twofold. *Section 191, 1 Shinn on Att. & Garn.* 345 and 346.

The right of a defendant to enter an appearance without dissolving the attachment, and the effect of such an appearance under modern interpretation of attachment laws, are very fully considered in 1 *Shinn. on Att. & Garn.* §§ 5, 221, 442 and 449.

The right of the plaintiff to take his judgment of condemnation, where there has been no appearance or no entry of security up to the last day of the second term, is not denied, but in the absence of any express language of the statute prohibiting such appearance, it would be unreasonable to imply a prohibition so violative of the rights of the defendant.

That the statute on attachment should not be extended beyond its express provisions would seem to follow from the language of the court in *Smith v. Armour & Co.,* 1 *Pennewill,* 361. 40 *Atl.* 720.

The duty of a court when considering the construction of a statute whose operation may be oppressive, is very plainly stated in *Wiscart v. Dauchy,* 3 *Dall.* 321, 328, 329, 1 *L. Ed.* 619.

The proceedings under a writ of foreign attachment, which are directed by *Section* 4145, *Rev. Code* 1915, to conform to those in the case of a domestic attachment, may very properly be held not to extend to the entry of a judgment as directed in *Section* 4137, *Id.* The judgment provided for in the case of a domestic attachment is plainly a default judgment, and the method of the application of the property seized in satisfaction of such judgment is only by a special order of sale of the court. In the case of a judgment in foreign attachment, sale may be had either under a special order of the court, or by *fieri facias, capias ad satisfaciendum,* or otherwise, as on other judgments. The judgment contemplated by proceedings in foreign attachment are judgments which are equivalent to general judgments.

The defendant should have, under the statute, a right to enter an appearance without dissolving the attachment by enter-

ing security, in order that he may be heard before judgment is rendered against him. *Taylor v. Rossiter*, 6 *Houst.* 485; *In re Warthman*, 4 *Pennewill*, 319, 55 *Atl.* 6.

In both of these cases the court decided, without any express authority of the statute, that the defendant had a right, before the sale of the property attached, to enter his appearance without giving security to dissolve the attachment and to defend against the demand of the plaintiff. There can be no essential difference between permitting the defendant to enter his appearance and make his defense immediately before judgment, and permitting him immediately after judgment and before sale, or the giving of a refunding bond by the plaintiff, to enter the same sort of an appearance and disprove the plaintiff's claim.

An action by foreign attachment in one of its two phases is a proceeding *in rem*. An action begun by capias is purely personal. In foreign attachment, property is seized; in capias, the body of the defendant. In foreign attachment, there may be no actual notice to the defendant; in capias, there can be no actual procedure with the case until arrest thereunder, which is most definite notice. In foreign attachment the statute provides for security to the extent of the property seized; in capias bail must be entered for the whole cause of action. In foreign attachment, upon entry of security by the defendant, the property seized is finally discharged; in capias proceedings, the bail to the sheriff may be relieved, either by the entry of security to the action, which is bail above, or by the surrender of the body of the defendant. Under the condition of the bond in the bail above to the action, the bail may be relieved either by the payment of the judgment recovered, or by the delivery of the body of the defendant. The only way in which bail in foreign attachment proceedings may be discharged is to pay the debt determined by the judgment.

Proceedings upon distress whether at common law or under our statute require actual notice of the distress to the tenant. In contemplation of law, the landlord owns the rent, which is reserved in the lease, and the tenant takes the lands from which rent is to issue, with the full understanding that such is the case and subject to the landlord's right of distress. The tenant who disputes

this right may well be required to give bond that he will make good his claim in his replevin suit.

It is submitted that the striking off of the appearance and the pleas entered in this case would be in violation of the constitutional principle that a defendant has a right to voluntarily appear and defend in any case brought against him, in accordance with the due process of law principle enunciated in the first section of the Fourteenth Amendment. *Lawrence v. Jarvis*, 32 *Ill.* 316.

The appearance entered by the defendant in no wise effects the security obtained by the plaintiff in his attachment. Assuming that there is an express method provided for the entry of appearance, coupled with the dissolution of the attachment by the giving of bail, and that the law nowhere prohibits a defendant from entering a general appearance, where must the court look for authority to deprive a defendant of the right to enter such general appearance? Certainly not to the "custom of London." *Fitch v. Ross*, 4 *Serg. & R.* (*Pa.*) 557.

The defendant having entered appearance and filed pleas in defense, there is no constitutional power in the Legislature or the court to direct that such appearance and pleas should be stricken off. *Summerville v. Kelliher*, 144 *Cal.* 155, 160, 77 *Pac.* 889; *McClatchy v. Sup. Ct. of Sacramento County*, 119 *Cal.* 420, 51 *Pac.* 696, 39 *L. R. A.* 694; *Postal Tel. Cable Co. v. Adams*, 155 *U. S.* 689, 698, 15 *Sup. Ct.* 268, 360, 39 *L. Ed.* 311; *Riglander v. Star Co.*, 98 *App. Div.* 101, 107, 90 *N. Y. Supp.* 772; *Hovey v. Elliott*, 167 *U. S.* 409, 17 *Sup. Ct.* 841, 42 *L. Ed.* 215; *Foley v. Foley*, 120 *Cal.* 33, 52 *Pac.* 122, 65 *Am. St. Rep.* 147; *Ex parte Lange*, 18 *Wall.* 163, 178, 21 *L. Ed.* 872; *Galpin v. Page*, 18 *Wall.* 350, 21 *L. Ed.* 959; *McVeigh v. U. S.*, 11 *Wall.* 259, 20 *L. Ed.* 80; *Windsor v. McVeigh*, 93 *U. S.* 274, 23 *L. Ed.* 914.

Unless the court adopt what we contend is the reasonable construction of our attachment laws, and that is, that a nonresident individual defendant has the same right as a nonresident corporation defendant to appear and defend on the merits, without giving bail, then we contend, first, that the court must ignore what it is apparent from *Section* 4143, *Rev. Code* 1915, the Legislature conceived to be the rights of a nonresident individual

defendant; second, that to so construe the attachment law as to deprive the defendant of this right is against the Constitution of the United States; and, third, that *Section* 4143, being enacted subsequently to our attachment laws, under which individual nonresident defendants were held, either by necessary implication repealed such disability upon the part of an individual, if such had existed before, or else makes a classification between individuals and corporations which has no reasonable basis for its existence.

We fail to see how *Vogle v. New Granada Canal Co.*, 1 *Houst.* 295, is a complete answer, or any answer, to the defendant's contentions on this point. The court, in their determination of this case in favor of Chancellor Bates' client, did not find it necessary to consider his constitutional objection. The Legislature and their advisers, in passing the act the next year, subjecting foreign corporations to attachment, evidently considered such constitutional objection as fatal.

While the defendant has voluntarily appeared and by such voluntary appearance submitted himself to the jurisdiction of this court, and expressed his readiness to here defend, yet, if the court should strike off such appearance and pleas filed by the defendant, the court would be without jurisdiction, because it is confronted with the sworn statement of fact filed in this cause, that the Wooten Land and Fuel Company, the garnishee, while a corporation of the State of Delaware, is not now doing, and never has done, business in this state. The only corporations which are subject to attachment under our attachment laws are set forth in *Section* 4120, *Rev. Code* 1915, as originally passed in 1871 (14 *Del. Laws*, *c.* 90), which provided "all corporations chartered by Act of the General Assembly of this state," etc. This language was amended in 1889, by striking out the words, "chartered by Act of the General Assembly of," and inserting in lieu thereof the words "doing business in." 18 *Del. Laws*, 947.

It is obvious that while the statutes make our domestic corporations subject to the attachment laws, and their stock, as well as other personal property, rights and credits, attachable, the Legislature saw fit, in 1889, to limit the corporations thus

subject to the attachment laws, to those corporations "doing business in this state."

The Legislature, in order to reach the intangible property of stock in the corporation, has declared such stock to be personal property, has declared that the situs of such intangible property in a corporation of this state is the State of Delaware, for all purposes except taxation, and, long before 1889, prescribed the machinery by which such stock could be *attached*.

This law must be strictly construed. The attachment law makes only corporations doing business in this state amenable thereto.

The writ in this case commands that the sheriff "*attach* the defendant, by all his goods and chattels, rights and credits, lands and tenements, in whose hands or possession soever the same may be found." It is this writ which is the foundation of the right to bring in a corporation to answer as to capital stock.

The necessity of such statutes are bottomed upon and founded upon and depend upon our general attachment laws for their life, being and reason, and such being so, implications will not do, and in these statutes no direct language can be found enlarging the class of corporations who are subject to the attachment laws, where the personal property known as "stock" is sought.

The defendant did not overlook *Section* 1896, *Rev. Code* 1915, nor *Section* 1930, *Id.*, which provides that shares of stock shall be deemed personal property, nor *Section* 4150, *Id.*, which of necessity must refer to corporations subject to the attachment laws, as provided in *Section* 4120, *Id.*, nor the case of *Fowler v. Dickson & Tweeddale.* This case arose upon a question of service in an attempt to attach stock of a corporation.

The opinion of the court in this case, besides deciding that the sevice was not good, which was the question before the court, has a general discussion of the foreign attachment law, and stating it had its origin in the custom of London. *Smith v. Armour & Co., supra; Beard v. Union & Amer. Pub. Co.,* 71 *Ala.* 60, at 62; *Barse, etc., Co. v. Range Valley, etc., Co.,* 16 *Utah,* 59, 50 *Pac.* 630, at 632; *St. Louis, etc., Ry. Co. v. Fire Assoc. of Phila.,* 55 *Ark.* 163, 18 *S. W.* 43, 46; *Charter Oak Ins. Co. v. Sawyer,* 44 *Wis.*

387; *Christian v. Amer., etc., Co.*, 89 *Ala.* 198, 7 *South.* 427; *American Glucose Co. v. State of New Jersey*, 43 *N. J. Eq.* 280, 282, 5 *Atl.* 803; *Standard Underground Cable Co. v. Attorney General*, 46 *N. J. Eq.* 270, 272, 19 *Atl.* 733, 19 *Am. St. Rep.* 394.

The attachment laws of this state can only reach those persons, natural or artificial, who are designated and included within the plain language of the statute.

PENNEWILL, C. J., delivering the opinion of the Court in Banc:

On December 23, 1915, a writ of foreign attachment was issued against the defendant at the suit of the plaintiffs, and the sheriff was directed, by indorsement on the writ, to summon as garnishee the Wooten Land and Fuel Company, and to take bail in the sum of two hundred thousand dollars. The writ was issued on the filing of the usual affidavit prescribed by the statute in such cases, viz.: That the defendant was indebted to the plaintiff in a sum exceeding fifty dollars, and that the defendant resided out of the State of Delaware.

The sheriff's return shows that he attached all the shares of the capital stock of said corporation, with all the rights thereunto belonging, and received from the directors a certificate, made part of the return, showing the number of shares held or owned by the defendant to be thirty-three thousand three hundred and twenty-four and one-third.

On January 17, 1916, a narr. was filed by the plaintiff, and rule pleas by the first general rule day in February. The declaration contained the common counts. There was no bill of particulars filed, but simply the date and amount of indebtedness.

On March 2, 1916, counsel for the defendant, for the purpose and with the intent of entering an appearance for the defendant wrote their names opposite the name of the defendant where it appears in the statement of the case on the appearance docket of the court, and later on the same day delivered to the Prothonotary a paper writing containing defendant's pleas to the declaration of the plaintiff. This paper was marked "Filed" by the Prothonotary, who also made the following entry in said appearance docket:

"March 2, 1916.   Defendant pleads, with copy, non assumpsit, statute of limitations, payment.   Rule reps, and issues by second rule day in March."

On March 13, 1916, a written motion was made and filed by plaintiffs' counsel, asking that the appearance of defendant's counsel and the entry thereof made by the Prothonotary be stricken out, and that said paper writing containing what purported to be pleas in said case, be stricken from the files of this court.

These are the material and undisputed facts in the case.

On March 14, 1916, counsel for the defendant filed a paper in the nature of an answer to the motion of the plaintiffs, which in substance is as follows:

That said company, while a corporation of this state has never been engaged in business here—all its business and activities being in the States of Colorado and New Mexico. That the defendant is a resident of Colorado, and that the stock attached in this case constitutes substantially all of his property.

That a receiver has been appointed for said company by the United States District Court in Colorado, and the market value of said stock has been thereby temporarily destroyed, although in fact of great value, so that the defendant has found it impossible to secure the required bail to procure the discharge of his shares of stock from attachment.

That the defendant has a good defense to the whole of any cause of action stated in said suit, the nature of which is that there exists no indebtedness whatsoever due to the said plaintiffs from the said defendant either at this time or at the time said suit was instituted.

That the entry of bail for the discharge of property seized under a writ of foreign attachment is not a necessary prerequisite for the entry of appearance by the defendant.

That the entry of appearance by the defendant may be made without disturbing the seizure of property thereunder, or its security for any judgment finally entered in the suit.

That the purpose of the writ of foreign attachment is twofold, to wit: To compel the appearance of the defendant, and to devote or apply the value of the property attached to any judgment obtained in this action.

Where, in any case, appearance has been entered by the defendant, and pleas filed, no judgment can be entered until the trial of the issue so raised.

That under our foreign attachment statutes only those corporations that are doing business in this state can be summoned as garnishees.

If the statutes of this state relating to foreign attachment cannot be construed so as to permit appearance and defense in a foreign attachment case without entering bail or security for the discharge of the property attached, then such statutes are unconstitutional under the first section of the Fourteenth Amendment of the Constitution of the United States, in that they deprive parties defendant, in cases brought thereunder, of their property without due process of law.

That such statutes are also unconstitutional because they make an arbitrary, unreasonable and illegal classification of the persons affected by them.

To require the defendant to give bond in the sum of two hundred thousand dollars to procure the dissolution of said attachment and the release of the shares of stock attached, as a condition precedent to the allowance of an appearance and entry of pleas in bar by the defendant, is oppressive, unreasonable, and in violation of fundamental principles for the administration of justice.

Such is substantially the argument of counsel for the defendant, as contained in their brief.

The plaintiffs dispute, practically, every contention made by the defendant, and insist that he is not in court and cannot make any motion or defense because there can be no appearance in the case without entering special bail.

They rest their case upon the language of the statute and the uniform practice thereunder, for more than a hundred years. They claim that never, before the present case, has any one contended that an individual defendant could appear in a foreign attachment case without entering special bail. And, it is argued, while there is no express inhibition in the statute against it, the implication is as strong and conclusive as an express inhibition would be. Not only does the providing of one means of appear-

29 Del.]    MORGAN'S EXECUTORS vs. OWNBEY.    401

Opinion.

ance exclude any other, but the effect of appearing without entering special bail would take from the plaintiff every advantage of the attachment, and certainly the Legislature did not intend that the statute should be so construed. If an appearance is entered without giving special bail the action becomes, from that moment an action in *personam* and is no longer an action *in rem;* and it is further contended that any judgment recovered in the case after such appearance would be a general judgment, and the lien of the attachment lost. It is not conceivable that the defendant can by simply entering an appearance, deprive the plaintiffs of every advantage gained by their attachment.

The plaintiffs claim that a judgment cannot be entered after the second term, and this being the second term an appearance and trial would cause a continuance and make it impossible to recover any judgment at all under the statute. It is also claimed that the statute, which provides that corporations doing business in this state may be summoned as garnishee, has no application to this case.

To the contention of the defendant that if an appearance cannot be entered without giving special bail, the statute is unconstitutional under the Fourteenth Amendment of the Constitution of the United States, because it deprives parties defendant of their property without due process of law, the plaintiffs reply, that the defendant is not deprived of an opportunity to make his defense. Under the statute he may appear and defend the action by giving security to the value of the property attached. This, it is argued, is not an arbitrary or unreasonable requirement, but it is in fact the law of the land in many actions *in rem.*

We have stated substantially the plaintiffs' argument as made in the case.

It is probably true, as plaintiffs aver, that never before has any one contended that there could be an appearance in a foreign attachment suit against an individual without entering special bail.

This fact does not prove that such an appearance cannot be made, but it is of much significance, and necessarily has some weight with the court. But conceding that the practice has been

long and uniform, the defendant argues that the question raised in this case has never been raised before, and that, therefore, it is a new question before the court. Moreover, the defendant says: A case like the present one has never been presented to the court before. The only distinguishing feature, however, is that the amount of bail required is so large that it is impossible for the defendant to furnish it. We cannot regard that fact as sufficient to distinguish this case from others, because in every foreign attachment suit the ability of the defendant to furnish the security required to discharge the attachment depends very largely upon his financial condition. It might be as difficult and impossible for one person to give a small bond as for another to furnish a large one. The large amount of bail required in this case cannot, therefore, take it out of the general rule.

[1] The court are clearly of the opinion that in a foreign attachment suit against an individual, there can be no appearance without entering special bail; indeed, the entering of bail constitutes defendant's appearance. Defendant has produced no case in conflict with this conclusion; and while his reasoning based upon the language of the statute and the rights of defendants, is strong, it is not convincing.

This case involves a construction of a statute of our own state, and cases from other jurisdictions cannot be of much assistance to the court in any event.

The defendant argues that the statute has a twofold aspect, viz.: (1) To compel an appearance; and (2) to give the plaintiff a lien on the property attached for the payment of his claim.

While we think the purpose of the statute was to accomplish both of those things, we do not think the two things are separate and independent. The one must be dependent on the other, for otherwise entering an appearance would destroy the lien and advantage of the attachment. Surely the Legislature did not contemplate such a result.

The defendant insists that an appearance would not necessarily discharge the attachment, but we are wholly unable to agree to that proposition. He admits that an appearance by the defendant would change the action from one *in rem.* to one *in*

*personam.* If that be so then it must follow that the attachment which exists because the action is *in rem* is lost when the action becomes an ordinary personal action, unless the lien is saved by a provision such as is found in our statute respecting foreign corporations. That statute has been cited in support of defendant's argument that the lien of the attachment would remain even if there is a general appearance. But it seems to the court that such an inference is unwarranted because the fact that the attachment is saved by the language of the act respecting foreign corporations, even though there is an appearance, indicates that it would not be saved, in case of appearance, by the act respecting individuals which contains no such language.

But in case of appearance without giving security, any judgment recovered by the plaintiff would be a general judgment, and for that reason also the lien of the attachment would be lost. It is hardly arguable that such a judgment, or an execution issued thereon, would be a special lien on the property seized under the attachment.

The defendant seeks to meet this objection by citing two foreign attachment cases decided by this court in which, upon motion, the judgment obtained by the plaintiff was opened and the defendant let into a trial. But it is to be noted that in those cases judgment had been recovered, and permitting the defendant thereafter to disprove plaintiff's claim if he could, did not in anywise affect the lien of the judgment recovered in case the defendant failed in his defense. The lien on the property attached would, in that event, continue. In the two cases referred to the court evidently treated the judgment recovered as a judgment by default, and embraced within the provisions of another statute of the state which permits the court to open a judgment given by default in a summons case, and let the defendant into a trial, provided it is shown that he has a legal defense, and had no knowledge of the suit before the judgment was recovered. *Revised Code,* § 4089.

The court, in those two cases, acted either upon the belief that a judgment recovered in a foreign attachment suit was a judgment by default within the meaning of said act, or proceeded

in analogy thereto, and with the conviction that the court had the power, in the interest of fairness and justice, to afford the defendant an opportunity at some stage of the case to make a defense to. the action, if he previously had no knowledge of the proceeding against him.   And the court was also influenced, no doubt, by the thought, that permitting the defendant to make a defense would not prejudice or injure the plaintiff if the lien of his judgment was not affected.

Without expressing any opinion upon the correctness of the court's action in the cases referred to, or indicating what the court might do, after judgment, in a foreign attachment case where it clearly appears that it was not possible for the defendant to furnish the bail required, we say, that the action of the court permitting the defendant in a foreign attachment case to make a defense after judgment has no bearing on the question whether he can appear before judgment without entering special bail.

Another objection made to an appearance in this case is that a trial would necessarily cause a continuance of the case and prevent the plaintiffs from recovering any judgment under the statute.   The language of the statute requires that judgment shall be given at the second term if special bail is not entered. We do not decide that the court would not have the power to enter judgment after the second term, if for any reason the case had to be continued, but we do say that under the peremptory terms of the statute it is very doubtful, and such has been the general opinion of the bar for a long period of time.

The defendant claims that inasmuch as the plaintiffs filed a declaration in the case and ruled pleas, he had a right to appear and plead to such declaration.

It was stated by counsel for the plaintiffs that the declaration was filed out of abundant caution in view of the recent statute and new rules in relation to pleading.   Whatever induced the plaintiffs to file the declaration, it is certain that the fact it was filed cannot change the meaning and effect of the statute.

[2]   The defendant contends that, even if his appearance and pleas should be stricken off:

"The court would be without jurisdiction because it appears from the sworn statement of fact filed in the case that the Wooten Land and Fuel Company, the garnishee, while a corporation of the State of Delaware, is not now doing, and never has done, business in this state."

It is true that *Section* 4120 of the *Revised Code* provides that:

"All corporations doing business in this state, except banks," etc., "* * * are subject to the operations of the attachment laws, * * * as provided in the case of individuals, * * * and said corporations shall be liable to be summoned as garnishee," etc.

But the corporation was not attached in this case, neither was it summoned as garnishee. The stock of the defendant in the corporation was attached under *Section* 2009 of the *Revised Code*, which provides that:

"The shares of any person in any incorporated company, with all the rights thereunto belonging, may be attached for debt," etc.

Under this statute the corporation is not attached or summoned as garnishee, but an officer of the company gives to the sheriff a certificate of the number of shares held by the debtor in such company. This is an old law, very general in character, and not at all inconsistent with, or limited in its operation by *Section* 4120, a much later act.

Attention may be called, in this connection, to another act *Revised Code, Section* 1986, which provides that:

"For all purposes of title, action, attachment, garnishment, * * * the situs of the ownership of the capital stock of all corporations existing under the laws of this state * * * shall be regarded as in this state."

In view of these two statutes it is not necessary that the court should decide what is meant by the words of *Section* 4120, "doing business in this state;" and besides we fail to see that the statute making corporations doing business in this state liable to attachment can have any application to this case.

[3] In respect to defendant's contention, that if there can be no appearance under the statute without entering special bail, the statute is in conflict with the Fourteenth Amendment of the Federal Constitution, in that it deprives the defendant of his

property without due process of law, we say, that in our opinion the statute is not in conflict with said amendment. It does not deprive a defendant of the right and opportunity to make a defense to an action brought thereunder, but merely prescribes a condition to the exercise of such right. He may appear and make his defense provided he gives security to the amount of the property attached. The security required simply takes the place of the property the plaintiff, by his diligence, has already seized and there is nothing unreasonable in the requirement. It is the same thing that the defendant must do in other actions *in rem.* in order to make a defense. It is the law of the land in respect to such actions, and does not deprive the defendant of any right or property without due process of law. The requirement is not arbitrary or unreasonable, and is not different in principle nor greater than the defendant must meet in a distress for rent, other attachment, or in a *capias ad respondendum.*

The plaintiffs have failed, we think, to produce any case that is at all in conflict with our conclusion upon this point.

[4] We are also of the opinion that the statute is not unconstitutional because, as defendant claims, it makes an improper or illegal classification of persons to be affected by it. Little stress, or reliance apparently, was placed upon this point at the argument, and we think it unnecessary to discuss it.

The decision of the court, upon the whole matter, and after carefully considering the able and interesting argument of counsel, is that the statute in question is constitutional, and that in an action brought thereunder the defendant can appear only by entering special bail. This conclusion is supported by the great weight of authority. Indeed, we have seen no case to the contrary.

We have covered at sufficient length, we think, the points involved in this case. A discussion of all questions raised, commensurate with the elaborate arguments made by counsel, would unduly prolong this opinion.

It is ordered that the foregoing opinion be and it is certified to the Superior Court for New Castle County.

(Signed by the Judges.)

Whereupon the Superior Court, after reciting the then condition of the record, made an order as follows:

"It is ordered by the court that said attempted appearance of Ward, Gray and Neary, Esquires, for said defendant and the said docket entries made by the Prothonotary as aforesaid be stricken out, and that said paper writings containing pretended pleas and reply to plaintiffs' motion, marked 'Filed' by the Prothonotary as aforesaid, be stricken from the files of this court; and

"It is further ordered that judgment for want of appearance, collectible only from the property attached, be entered in favor of the said plaintiffs and against the said defendant, and further that the amount of said judgment be ascertained by inquisition at bar."

The amount was so ascertained at the succeeding May term. But before the amount of the judgment had been ascertained, security as required by the statute not having been given, counsel for the defendant presented a petition assigning reasons for opening the above judgment, being substantially the same assigned for opening final judgment hereinafter shown, and moved for a rule upon the plaintiffs to show cause why the judgment should not be opened and the defendant be permitted to appear and disprove or avoid the debt or claim of the plaintiffs. A rule was thereupon issued directed to the plaintiffs in the judgment, returnable on, etc. The time for return was subsequently enlarged to etc., and an order was made by the court directing the sheriff to serve the writ on the attorneys of record for the plaintiffs without prejudice as to the legality of service so made.

The return indorsed on the rule was as follows:

"Made known personally to Saulsbury, Morris and Rodney, Attys. May 18, 1916," etc.

The attorneys for the plaintiffs petitioned the court for permission to appear specially for the purpose of moving to quash and set aside the return of the sheriff on the ground of illegal service. The prayer of the petition was granted. Motion was made to vacate said service, and also, without prejudice to the rights of the plaintiffs, that the petition to open judgment be stricken from the files of the court; that the rule be discharged in that the matters set forth in the petition were not sufficient to

warrant the opening of the judgment, and that the order directing the issuance of the rule be vacated.

The questions of law raised by the motions were directed to be heard by the Court in Banc, and were so heard.

ARGUMENT FOR DEFENDANT IN SUPPORT OF PETITION TO OPEN JUDGMENT FOR WANT OF APPEARANCE.

The judgment entered was not a final judgment but only a judgment by default, an interlocutory judgment as ׳defined in *Citizens' Loan Association v. Martin,* 1 *Marv.* 213, 40 *Atl.* 1008.

The service of the rule upon the counsel for the plaintiffs is due service in this case. It may well be doubted whether any formal service was necessary. Notice to or knowledge of the attorney for the plaintiffs would seem to be all that ought to be required of any application in a pending cause.

In the two statutory provisions which contemplate the opening of judgments, *Sections* 4089 and 4169, *Rev. Code* 1915, no form of notice is prescribed. These provisions apparently deal with essentially final judgments.

Rule 6 of the Superior Court seems to elevate notice upon counsel for matters in a pending cause as the regular and not the exceptional modes of service. 1 *Woolley on Del. Prac.,* § 219.

*Section* 3730, *Rev. Code* 1915, confers upon the Superior Court, power to make rules. Under such a power the court might, as it did in the present instance, prescribe the service of the rule upon the attorney of record of the nonresident parties plaintiff, represented by responsible counsel of record who is still engaged in prosecuting the cause which has not yet reached final judgment.

Courts have not generally found any real difficulty in directing service of rules or processes upon the attorney of record for the plaintiff, upon application to open judgments, even though such judgments may have been *pro forma* entered as final judgments, and they have exercised such power without any statutory authority, by virtue of their common law powers, and for the purpose of conserving the ends of justice, where the plaintiffs are nonresidents. *Beach v. Beach,* 6 *Dak.* 371, 43 *N. W.* 701; *Pick v. Glickman,* 54 *Ill. App.* 646; 30 *Cent. Dig.* § 749 title "*Judgments*";

*Phelps v. Heaton,* 79 *Minn.* 476, 82 *N. W.* 990; *Merriam v. Gordon,* 17 *Neb.* 325, 22 *N. W.* 563, 565; *Branch v. Walker,* 92 *N. C.* 87; 30 *Cent. Dig.* § 749, title "*Judgments*"; *Yorke v. Yorke,* 3 *N. D.* 343, 55 *N. W.* 1095, 1097; *Sturgiss v. Dart,* 23 *Wash.* 244, 62 *Pac.* 858, 861; *Dane v. Daniel,* 28 *Wash.* 155, 68 *Pac.* 446, 449.

Said *Sections* 4089 and 4169, *Rev. Code* 1915, cover two cases under which proceedings may be had to open judgments, which would be final if they were left undisturbed.

*Section* 4089 prescribes particularly averments in the affidavit of application denying notice, etc., and a just and legal defense. *Section* 4169 requires the averment of a sufficient cause and imposes the giving of security for the payment of the judgment, interest and costs, which the plaintiff may finally recover.

The general power of the court to control its judgments during the term of their rendition, or during all stages of a cause to the rendition of a final judgment, are left wholly unregulated by statute.

That the Superior Court has a much more extensive control over its judgments than is defined in either of the statutes cited is apparent from an inspection of the Delaware Reports. To illustrate with a few instances: *Lofland v. McDaniel,* 1 *Pennewill,* 416, 41 *Atl.* 882; *Woodward, Baldwin & Co. v. Arlington Mills,* 2 *Pennewill,* 188, 44 *Atl.* 620; *Janvier v. Culbreth,* 5 *Pennewill,* 505, 63 *Atl.* 309.

Courts of general jurisdiction have an inherent power, essential to such jurisdiction, to open or vacate judgments, and do not depend for such power upon a statute. A statute covering certain phases of the power has no operation to limit the powers of the court in this behalf. 1 *Black on Judgments,* § 297.

Numerous cases support the same doctrine. *Kemp v. Cook,* 18 *Md.* 130, 79 *Am. Dec.* 681, 694; *Bradley v. Slater,* 58 *Neb.* 554, 78 *N. W.* 1069; *Donnelly v. McArdle,* 14 *App. Div.* 217, 219, 220, 43 *N. Y. Supp.* 560; *Kiefer v. Grand Trunk R. R. Co.,* 55 *Hun.* 604, 8 *N. Y. Supp.* 230; *Ladd v. Stevenson,* 112 *N. Y.* 325, 19 *N. E.* 842, 8 *Am. St. Rep.* 748.

The petition of the defendant and rule to show cause have been judicially determined in this state to be the proper procedure for

moving to open a judgment by default in a foreign attachment case. *In re Levy, 3 Pennewill, 5, 50 Atl. 540.*

The judgment under consideration is an interlocutory judgment. The control of a court over interlocutory judgments at any time before final judgment is plenary. The motion to open such a judgment need not be made at the term of the entering of such interlocutory judgment, but may be made at any time before final judgment. 1 *Black on Judgments*, § 308; *Kitchen v. Strawbridge*, 14 *Fed. Cas.* 692, *No.* 7,854; 4 *Wash. C. C.* 84; *Starke v. Woodward*, 1 *Nott & McC. (S. C.)* 259; *Hastings v. Cunningham*, 35 *Cal.* 549; *Mowatt v. Cole*, 59 *Ill. App.* 345; *Matthews v. Cook*, 35 *Mo.* 286, 289; *Burnes v. Burnes*, 61 *Mo. App.* 612; 30 *Cent. Dig.* § 300, title "*Judgments*"; *Blythe v. Hinckley, (C. C.)* 84 *Fed.* 228. 239.

Where, from the circumstances of the case, the court are in doubt whether the judgment should or not be opened, such doubt should be resolved in favor of the motion. *Black on Judgments*, § 354; *Vermont Marble Co. v. Black* (1894) 4 *Cal. Unrep. Cas.* 901, 38 *Pac.* 512, 961; *Watson v. San Francisco, etc., R. Co.*, 41 *Cal.* 17, 20; *Westphal v. Clark*, 46 *Iowa*, 262, 264; *Hull v. Vining*, 17 *Wash.* 352, 49 *Pac.* 537, 539; *Mason v. McNamara, et al.*, 57 *Ill.* 274, 277.

This application is directed to the equitable powers and discretion of the court. *Plunkett v. Dillon*, 3 *Del. Ch.* 496, 509, 510; *Townsend v. Townsend*, 5 *Harr.* 20; *Hickman's Adm'r. v. Hickman*, 3 *Harr.* 511, 512.

That the Superior Court has equitable powers appears from statutory and constitutional provisions. *Section* 3726, *Rev. Code* 1915; *Article IV, Section* 24, *of the Constitution of* 1897.

What equitable powers are, as distinguished from the general powers of a court of law, are very clearly summarized in 1 *Pomeroy's Eq. Jur.* § 67.

The injustice or prejudice to the rights of the party moving to open the judgment constitutes the basis for the exercise of the equitable powers or discretion of the court, which is unlimited. 1 *Black on Judgments*, § 318.

The Superior Court has never refused to exercise its equitable

power and discretion upon a motion to open the default judgment in a foreign attachment and let the defendant in to disprove the amount of the indebtedness. *Taylor v. Rossiter*, 6 *Houst.* 485; *In re Warthman*, 4 *Pennewill* 319, 55 *Atl.* 6; *In re Levy*, 3 *Pennewill* 5, 50 *Atl.* 540.

In these cases it is true there was an element of surprise which is absent from the present case, so far as notice of the pendency of the action is concerned.

The facts in the present case must appeal with as much strength to the equitable and discretionary powers of the court as in those mentioned. The nature of the defense is that no sum of money whatsoever is due from the defendant to the plaintiffs. The hardship of this case is clearly equal to that of either of the cases in which the court has acted favorably. Such hardship is accented by the fact that the plaintiffs, by pending proceedings against a corporation, the defendant's stock in which constitutes the property seized under this attachment, have destroyed for the time being the value of the stock as a means of furnishing security for the bail required.

It may be urged that the plaintiffs cannot carry away the proceeds of the sale of capital stock so seized without giving a bond, and that the defendant has the right, within a year after the giving of such bond, to appear and disprove the indebtedness of the defendant to the plaintiffs. Under the conditions existing and with the certainty that the stock so sold under such conditions would be ruinously sacrificed, the right of the defendant to come in and disprove the indebtedness and take the proceeds of such sale, is a mere mockery.

Upon the former argument in this cause, the right of the plaintiffs to secure their judgment by default at the second term, or run the risk of never securing the same, constituted a strong leverage to impel the court not to interfere.

In the present situation, the judgment by default is secure and cannot be affected or menaced by the defense of the defendant against the debt claimed by the plaintiffs against him. *In re Warthman, supra.*

Opening a default judgment merely to let the defendant in

to a defense does not destroy its lien; the lien continues for the statutory period. 1 *Black on Judgments*, § 472.

The risk or danger to the plaintiffs, therefore, upon the granting of the motion to open this judgment, is substantially nothing. Balanced as against this secure position of the plaintiffs is the ruin of the defendant by the sacrifice sale of his property.

Here is an opportunity for the exercise of the indisputable equitable power of this court, so as to prevent the perpetration of an enormous injustice due to an archaic procedure sanctioned by our practice. *Souerbry v. Fisher*, 62 *Ill.* 135.

It may be advanced as a general principle, that without statutory authority to the contrary an executor can neither sue nor be sued *qua* executor beyond the sovereignty in which he was appointed. 1 *Williams on Executors* 429, and cases cited; *Hopper v. Hopper*, 125 *N. Y.* 400, 26 *N. E.* 457, 12 *L. R. A.* 237; *Johnson v. Powers*, 139 *U. S.* 156, 157, 158, 11 *Sup. Ct.* 525, 35 *L. Ed.* 112; *Stacy v. Thrasher*, 6 *How.* 44, 58, 12 *L. Ed.* 337; *Noonan v. Bradley*, 9 *Wall.* 394, 19 *L. Ed.* 757; *Reynolds v. Stockton*, 140 *U. S.* 254 272, 11 *Sup. Ct.* 773, 35 *L. Ed.* 464.

*Section* 3404, *Rev. Code* 1915, permits a foreign executor upon complying with certain conditions prescribed, to bring suits in our courts. The statute requires that a copy of the letters of appointment certified under the hand and seal of the court or officer making the appointment, shall be *produced* in our court. This the plaintiff never did.

ARGUMENT FOR PLAINTIFFS AGAINST PETITION TO OPEN JUDG-
MENT FOR WANT OF APPEARANCE.

Judgments have been opened or vacated for certain reasons or purposes, as shown by the decisions in this state; yet the powers of the court have never been clearly limited and defined by any decision on this point; nor does it appear whether the power is limited and confined by analogy to the practice under the common law writs of *audita querela* and *coram nobis* and *coram vobis*.

The writ of *audita querela* must be served upon parties made defendant to it. 3 *Enc. Pl. & Pr.* 122.

It is a regular suit, with its usual incidents, pleadings, issues of law and fact, trial, judgment and error.   3 *Enc. Pl. & Pr.*, 113; *Freeman on Judgments*, § 95   *Black on Judgments*, § 299.

Like service was probably necessary on the *scire facias* issued upon the writ of *coram nobis* and *coram vobis.*   3 *Enc. Pl. & Pr.* 2.

In the event that the practice of opening judgments on motion is limited by analogy to the practice under the common-law writ of *audita querela*, the service on the rule must be actual and not substituted service, for it is not then a motion in the same suit, but is the institution of a new suit.

In the event that the court should be of the opinion that the filing of the petition and the issuance of a rule to show cause whether the judgment was not the institution of a new suit and that the rule issued as part of the proceedings in the main cause, it is submitted that the paper writing purporting to be a petition should be stricken from the files of the court, the rule discharged and the order directing the issuance of the said rule be vacated in that the said defendant has not appeared in said cause by giving special bail as required by the statute.

The judgment entered in this proceeding was an interlocutory and not a final judgment.   *Freeman on Judgments*, § 12; *Black on Judgments*, § 28; 23 *Cyc.* 765; *Woolley on Del.   Prac.* §§ 392, 764; *Cit. Loan Ass'n. v. Martin*, 1 *Marv.* 213, 40 *Atl.* 1108; *Daniel v. Cooper*, 2 *Houst.* 506.

An action or proceeding is pending from the time of its commencement until the rendition of final judgment therein.   *Rice v. McCaulley*, 7 *Houst.* 226, 31 *Atl.* 240; 25 *Cyc.* 1469; *Tichenor v. Collins*, 45 *N. J. Law*, 123, 124; *Holland v. Fox*, 3 *E. & B.* 977, 985; 77 *E. C. L.* 977, 118 *Reprint* 1407.

The court has said in this case:

"The court are clearly of the opinion that in a foreign attachment suit against an individual there can be no appearance without entering special bail; indeed the entering of bail constitutes defendant's appearance."

See also 1 *Sellon's Prac.* 91.

It appearing that the defendant has not entered special bail

that is, has not appeared, it follows that he cannot be heard in any manner in the main cause.

If the court shall be of the opinion that the petition of the defendant was attempted to be filed in the main proceeding and was not the institution of a new proceeding, then the motions of the plaintiffs should be granted.

The facts set forth in the petition for opening the judgment are not sufficient to authorize the opening of the same.

The judgment rendered in this proceeding is collectible only from the property attached. The rendering of the interlocutory judgment makes more firm and stable the attachment but does not enable the plaintiffs to obtain satisfaction out of any property other than that attached; from which it follows that the opening of the judgment to permit the defendant to appear and defend, substantially vacates the judgment without dissolving the attachment.

The petition does not disclose that the defendant is able now to enter special bail. If the interlocutory judgment were opened or vacated the proceeding would be restored to the same condition it was at the time of entering the judgment, save only that the second term has now elapsed and the plaintiffs would be without an opportunity of obtaining judgment in the proceeding, even if the defendant should neither appear nor make any defense for the reason that the second term has now elapsed. The result would be that the action would be defeated without being defended.

If the prayer of the petition should be granted, and the interlocutory judgment should remain cautionary, there would then exist the order of the Superior Court that the amount due on the judgment be ascertained by inquisition at bar to be followed by another order of the court that the amount due on the interlocutory judgment be ascertained upon an issue framed by the court or upon an issue arrived at by the pleadings. The method and time of ascertaining the amount due on the interlocutory judgment by inquisition is prescribed by *Section* 3729, *Rev. Code* 1915, viz.: "At the same or next court."

The method prescribed is exclusive. *Woolley's Del. Prac.* §393.

The opening of the judgment would permit the defendant to defend without appearance. In actions instituted by summons the defendant may be heard at the inquisition and may give evidence in mitigation of damages, but this is because he may appear after the interlocutory judgment in the same manner as before. *Woolley on Del. Prac.* § 392.

But in cases of attachment where an appearance may be entered only by giving the required bail, the defendant cannot be heard at the inquisition. *McClenachan v. McCarty*, 1 *Dall.* 375, 1 *L. Ed.* 183; *McDaniel v. Townsend*, 4 *Pennewill*, 359, 55 *Atl.* 6.

If the judgment should be opened the requirements of the statute would be evaded and the defendant would be permitted to participate in the proceedings of the cause and defend at least in mitigation of damages without having even entered an appearance. It is impossible to conceive of such an anomaly. The defendant probably relies on *Taylor v. Rossiter*, 6 *Houst.* 485; *In re Levy*, 3 *Pennewill*, 5, 50 *Atl.* 540; *In re Warthman*, 4 *Pennewill*, 319, 55 *Atl.* 6.

In each of these cases the judgment was final and not interlocutory at the time the petition was filed. The petition in each case followed the requirements of *Section* 4089, *Rev. Code* 1915.

Some of the circumstances under which judgments generally may be opened are set forth in *Woolley's Delaware Practice*, §§ 838 to 842; also when they may be opened for the purpose of ascertaining the amount due thereon, *Id.* §§ 843 to 846; also when they may be *vacated*, *Id.* §§ 847, 849.

There are certain well recognized and well defined grounds for which default judgments will be taken off or set aside. The defendant does not allege irregularity, fraud, mistake or any other legal reason for setting aside the default. The sole ground alleged other than the allegation pertaining to the letters testamentary, is one of hardship which is not sufficient to set aside the default, and to nullify the statute. *Home Loan Ass'n v. Foard*, 3 *Pennewill*, 165, 50 *Atl.* 537; *Woolley v. Corbit*, 3 *Pennewill*, 501, 51 *Atl.* 601.

Defendant alleges that the plaintiffs have not produced to

the court, letters testamentary as required by the statute, and contends that the court was without jurisdiction to enter the interlocutory judgment.

The plaintiffs submit that the record discloses—

(1)    That the allegation is not true in fact.

(2)    That the nonproduction of letters is not jurisdictional, but are evidence as to and show only one of two things:

(a)    Capacity of plaintiffs, or

(b)    Title of plaintiffs.

(3)    Lastly, that the defendant is, by the default judgment precluded from denying either the capacity or title of plaintiffs. *Sections* 3404, 3405 and 3406, *Rev. Code* 1915.

1.    Whether required, or not, the plaintiffs filed a declaration in this proceeding at the time prescribed by the rules of this court for filing declarations generally; the said rules not yet having been construed in their application to attachment proceedings.    The declaration is a part of the record in this cause, and therein the plaintiffs made in the usual form, profert of the letters testamentary; the effect of which was to bring the letters testamentary into court, where they remained during the term after profert was made.    *Woolley on Del. Prac.* § 398; 18 *Cyc.* 988; *Bouvier's Law Dictionary, Profert in Curiam;* 16 *Enc. of Plead. & Prac.* 1082; 7 *Bacon's Abridgement*, 628; *Russell v. Jones*, 1 *Harr.* 433, 436, note.

The record discloses that the letters testamentary were produced in court, not only before the interlocutory judgment, but in the only manner that was proper at that step of the case.

2.    Production of letters is not jurisdictional, but goes only to capacity or title of plaintiffs.    18 *Cyc.* 1242; *Mitchell's Adm'r v. Woodward*, 2 *Marv.* 311, 43 *Atl.* 165.

Production of letters testamentary pertained only to the capacity or title of plaintiffs, and not having been specially pleaded by the defendant any failure to produce was waived by him.

3.    If the production of letters shows capacity of plaintiffs, the defendant's confession of the cause of action by default admits the plaintiffs' character and capacity as completely as a plea of non assumpsit, and the plaintiffs' capacity is thereby admitted.

If the granting of letters to the plaintiffs is a link in the plaintiffs' title, the defendant's confession of the plaintiffs' cause of action by suffering judgment by default is a complete admission of the granting of letters.   23 *Cyc.* 752, 1229.

It being shown that the production of letters is not jurisdictional, the defendant, even if he were in court, would be by the default judgment precluded from denying any matters necessary to support the judgment.

*Per Curiam* (Court in Banc):—In the matter of the rule to show cause why the judgment entered in the above stated case should not be opened, and the defendant let into a trial, the court are of the opinion that the rule should be discharged.   Our decision of this question makes it unnecessary to express any opinion upon the other points certified to the Court in Banc.

It is ordered that the foregoing opinion be and it hereby is certified to the Superior Court, for New Castle County.

(Signed by the Judges.)

Thereupon the Superior Court made an order discharging the rule.   Subsequently on the 29th day of May, 1916, the amount due on the judgment, obtained for want of appearance, was ascertained by inquisition at bar to be two hundred thousand one hundred and sixty eight dollars and fifty-seven cents, for which amount final judgment was entered.

On the same day, the defendant presented a petition praying:

"That the said final judgment may be opened and that he may be permitted to appear in this court and disprove or avoid the said debt or claim, and also that said final judgment be vacated."

The court directed that a rule issue, addressed to the plaintiffs, returnable on the 19th day of September following.   Service of the rule was made on Hugh M. Morris, one of the attorneys for the plaintiffs.   The petition filed recites the proceedings in the action, and the efforts of the defendant to obtain bail;   his failure to do so;   his attempt to appear and plead;   the filing of petition to open default judgment, to the end that the defendant might be permitted to contest the claim of the plaintiffs;   the entry of

the final judgment; the present inability of the defendant to furnish bail in the amount demanded; and discloses that a suit was instituted in the United States District Court for the District of Colorado by the plaintiffs and one Francis H. McKnight against the Wooten Land and Fuel Company, the defendant, and other persons, praying an accounting by the said Ownbey, who had been the general manager of the said the Wooten Land and Fuel Company, and the appointment of a receiver for said company. The petition further alleges:

"In said cause a receiver for said company was duly appointed and certain matters therein were referred to a master to take testimony;" that the master is still engaged in taking testimony in said cause and the receiver so appointed is now in possession and control of the property of the said the Wooten Land and Fuel Company, and that by reason thereof the market value of the shares of said company has been temporarily destroyed.

There is no allegation of any impropriety, illegality or fraud in the institution of the suit in Colorado.   It is also alleged on advice, that the plaintiffs in this action did not produce to this court their letters testamentary.

As heretofore, the questions of law raised by this motion were directed to be heard by the Court in Banc, and were so heard.

ARGUMENT IN SUPPORT OF MOTION TO OPEN THE FINAL JUDGMENT AND THAT DEFENDANT BE PERMITTED TO APPEAR AND DISPROVE OR AVOID THE DEBT OR CLAIM, AND THAT THE FINAL JUDGMENT BE VACATED.

The foundation principles which should govern the court in the present application are sufficiently laid down in the brief upon the motion to open the judgment by default.

Among the principles there set forth, reinforced by authority and argument, are:

(1)   Courts of general jurisdiction have an inherent power essential to such jurisdiction to open or vacate judgments, and do not depend for such power upon a statute, and that a statute covering certain phases of the power has no operation to limit the powers of such courts in the exercise of the due administration of justice.   (2)   The petition and rule to show cause have

been judicially determined in this state to be the proper procedure for moving to open a judgment by default, in a foreign attachment case. *In re Levy, 3 Pennewill*, 5, 50 *Atl.* 540. (3) The motion is directed to the sound discretion of the court. Courts should be more inclined to grant than to deny such motions. (4) The Superior Court has equitable and discretionary powers in the premises to which the application is directed. (5) This court has never refused to exercise such powers, when called upon for such exercise, upon a motion to open judgment in a foreign attachment and let the defendant in to disprove the amount of the indebtedness. The three cases of our reports cited show that such applications were made, and in two of them the judgments, which were then final judgments, were opened and the defendant was allowed to defend.

The difference between the opening of a judgment for the purpose of permitting a defense, and the vacation of a judgment, is apparent from the essential meaning of the terms used. 23 *Cyc.* 967, 973.

The plaintiffs contend that there is no power in the court, upon any terms or under any conditions, to open the final judgment by default in a foreign attachment case, except as provided in *Rev. Code* 1915, § 4135. It is submitted that such a conclusion has no basis in the law. 23 *Cyc.* 889 and 907; 1 *Black on Judgments* §297; *Bradley v. Slater*, 58 *Neb.* 554, 78 *N. W.* 1069; *Donnelly v. McArdle*, 14 *App. Div.* 217, 219, 220; 43 *N. Y. Supp.* 560; *Kiefer v. Grand Trunk R. Co.*, 55 *Hun*, 604, 8 *N. Y. Supp.* 230; *Ladd v. Stevenson*, 112 *N. Y.* 325, 19 *N. E.* 842, 8 *Am. St. Rep.* 748; *Martinson v. Marzolf*, 14 *N. D.* 301, 103 *N. W.* 937.

Our contention is, that there is nothing in the statute which should interfere with the exercise by the court of its general common law power to open its judgments, where applications are made at the first term upon the proper causes shown.

The pending motion was made at the term of the rendition of the final judgment, and still retains the character of a motion made before the end of the term at which the judgment was rendered.

It would be a vain thing for the plaintiffs to contend that the mere fact that the proceedings in foreign attachment and the

judgment therein obtained are regulated by statute, places such judgment beyond the reach of the court under its essential powers in the regulation and disposition of its own judgments at the term of their rendition.

The general, inherent and essential power of a court to control its own judgments during the first term is not a power to control or open a common law judgment, but a common law power to open judgments, whether rendered in accordance with statute or otherwise, where a proper case was presented.

It must be presumed that the real contention made is, that the court is powerless when a statute provides relief against a judgment within certain specified times or for certain specified causes, to proceed for the opening of a judgment at any other than the specified time or for any other than the specified causes. For contra, cases cited immediately preceding. The plaintiffs cite *Woolley v. Corbit,* 3 *Pennewill,* 501, 51 *Atl.* 601; *Home Loan Ass'n v. Foard,* 3 *Pennewill,* 165, 50 *Atl.* 537.

The first case simply supports the principle that, where a party proceeds professedly in accordance with the terms of a statute, the terms of the statute must be conformed to.  In the present case, the application is founded upon the essential powers of the court to grant relief in cases where the statute is silent.  In the second case the sole legal reason given by the court, in denying the application, was that such application was "not within the statute."  This case is of no authority whatsoever in the case at bar, for reasons heretofore fully set forth.

The comment upon *Taylor v. Rossiter, In re Levy,* and *In re Warthman* is of moment only in case the principle for which plaintiffs contend is sound law.  These cases are clearly sustainable upon the principles of the authorities and cases cited, *supra,* beginning with 23 *Cyc.* 889.

The cases of *Wells v. Shreve's Adm'r,* 2 *Houst.* 329, *Frankel v. Satterfield,* 9 *Houst.* 201, 19 *Atl.* 898, and *National Bank of W. & B. v. Furtick,* 2 *Marv.* 35, 42 *Atl.* 479, 44 *L. R. A.* 115, 69 *Am. St. Rep.* 99, definitely limit the matter under discussion by plainly stating that the suit in foreign attachment in this state in its original character is "in the nature of an *ex parte* proceeding in

*rem* to judgment in condemnation against the property bound by the foreign attachment." The discussion of the Court in Banc in its earlier opinion in this cause is also obviously confined to the proceedings preceding final judgment.

Statutes allowing appearance in foreign attachment cases only upon entering bail are generally obsolete. We must, therefore, refer to general principles, and it may be advisable to consider the nature of the lien in foreign attachment, and of the final default judgment in cases which remain until such judgment proceedings *in rem.*    *Shinn on Att. & Garn.* §§ 10, 323 and 324.

The statutes of this state upon foreign attachment are consistent with Shinn's discussion. They provide for a definite course of procedure, in which times and conditions are strictly provided for, perfecting the lien in and by the final judgment by default.

It would seem to be that the lien upon the property attached which was initiated by the levy under the writ in foreign attachment, is finally perfected by, and merged in the final judgment, and that by no proceedings subsequent to the final judgment, even though an appeal or an appeal with security is had, will affect the lien so perfected and merged.    1 *Shinn on Att.* § 451.

Opening a default judgment merely to let the defendant in to a defense does not destroy its lien; the lien continues for the statutory period.    1 *Black on Judgm.* § 472.

"Under no circumstances will the court be justified in refusing to receive and hear a motion to vacate the judgment; its discretion is to be exercised on the facts as developed on a hearing, not in defense of it."    23 *Ency. Law. and Prac.* 897.

No reported Delaware case has been found, wherein the court has refused to entertain a petition or motion to open or set aside any judgment.   In *Taylor v. Rossiter, In re Levy,* and *In re Warthman,* the court, without expressed doubt or question, did entertain petitions and motions to open final default judgments.

The plaintiffs contend that "remedy by attachment must be pursued in conformity with the terms of the law conferring it."

The plaintiffs' lien must depend upon strict conformity with the statute.   Even after the final judgment, when the plaintiff

gets his order of sale, and thereunder sells, he must observe the statute. He cannot take away the proceeds of the sale, without entering the bond provided for in *Section* 4135, *Rev. Code* 1915. If the defendant applies to open the judgment, for the purpose of questioning the amount due thereunder, under *Section* 4135, he also must strictly observe the statute. If the court has not inherent and essential power over its judgments, upon applications made at the term of their rendition, and if the provisions of said *Section* 4135 could be held to exclude the exercise of such essential and inherent powers of the court, and confine the court and the defendant to the regulations in *Section* 4135, in the matter of opening the final judgment in foreign attachment, the defendant would, of course, be without present remedy. The law, however, appears to be plainly and clearly laid down to the contrary, as already shown.

The plaintiffs invoke the rule of construction commonly expressed, "*Expressio unius est exclusio alterius.*" This is not a primary rule, and is invoked only secondarily when other rules may fail.

It is evident that there is no expressed intention of limiting the remedy of the defendant to the time and manner provided in *Section* 4135, to apply for the opening of the judgment, for the purpose of questioning the amount due. The inherent and essential powers of a court of law to control its judgments upon applications made at the term of their rendition, cannot be destroyed by a possible implication so faintly suggested as in said *Section* 4135. All of the cases which have dealt with this particular proposition, have found and hold that such essential and inherent powers of a court of law have not been destroyed by a statute providing for a particular exercise in particular cases, and at particular times, or under particular conditions, of a portion of such essential powers.

Counsel for the defendant gathers from plaintiffs' consideration given to opening and vacating judgments, that the points intended to be made are:

(1) That the opening of the judgment for the purpose of allowing the defendant to prove that nothing was due the plaintiffs,

is in effect the setting aside of the judgment, and that thereupon would be renewed the condition that the defendant could not appear in the cause before judgment without entering security.

(2)   That the opening of the judgment for the purpose of allowing the defendant to prove that nothing was due would in effect amount to setting aside the judgment as aforesaid, and that if the defendant should be allowed to appear for the purpose of questioning the amount due under said judgment, the judgment, when obtained after said hearing, if any sum was proven to be due the plaintiffs would be a different judgment, to wit, a personal judgment, and not a judgment *in rem*, and that the lien would be lost.

The force of the suggestions largely depends upon the nature of the final judgment by default into which the lien has been merged.   We may start with the proposition that the final judgment by default is a lien on the property seized under the writ.

Considering the authorities cited, the court in *Lofland v. McDaniel*, 1 *Pennewill* 416, 41 *Atl.* 882, limited the inquiry to matters subsequent to the judgment.

The statement of the practice in Pennsylvania, by which the judgment is opened for the purpose of allowing the amount to be questioned, and at the same time continuing and retaining the lien of the attachment and judgment upon the property attached, seems to announce a reasonable rule and procedure, and appears to have been followed by this court in the case of *In re Warthman*.

*Mott v. Union Bank of New York*, 38 *N. Y*. 18, states that:

"The court has authority, *under its general powers*, as well as under *Section* 174 of the *Code*, in its discretion, and upon such terms as it conceives to be just, 'to relieve a party from a judgment,' and allow an answer to be made."

In that case, the terms imposed by the court in its order allowing the judgment to be opened, and the amount claimed thereunder litigated, was that the judgment should "stand as security for the alleged indebtedness of the defendant to the plaintiff," pending the inquiry.   This is substantially the course adopted by the court *In re Warthman*.

There seems to be no real doubt of the power of the court to impose such terms for opening a judgment which is a lien upon property merely for the purpose of allowing the amount claimed to be questioned.

The opening of a judgment may temporarily suspend the further prosecution of the remedy by execution or otherwise, but does not reasonably import setting the judgment aside in the sense that the judgment itself is destroyed.

If the court in the present cause should order the judgment to be opened, for the purpose of allowing the defendant to show that no sum was due thereunder, and order as one of the conditions of opening that the lien of the judgment should be continued upon the property attached, when the trial has been had upon the question of amount, and the judgment was again closed, if any sums were found due, the judgment so closed must necessarily have the character of the original judgment.

The court can also, by virtue of its general inherent and essential powers, impose conditions of appearance and defense of amount claimed, in making its order of opening and retain the judgment in its character as a lien upon the property attached. *McDaniel v. Townsend*, 4 *Pennewill* 359, 55 *Atl.* 6, does not disclose to counsel for the defendant that it is an authority in the present application.

Plaintiffs suggest that the petition does not set forth a sufficient reason to move the court, on the ground that there is no allegation of fraud in the combination of the action in Colorado cotemporaneously with the action in Delaware. By the proceedings in Colorado, these plaintiffs have destroyed temporarily the value of the defendant's stock, which was attached, for any purpose of entering the security required. Having done that, the plaintiffs bring suit under the harsh laws of Delaware regulating foreign attachments and put the defendant in the position that he may not and cannot defend against the alleged claim of the plaintiffs, without doing a thing wholly impossible for him to do, owing to the condition of his capital stock so attached. Why is there any necessity to allege fraud on the part of the plaintiffs? The condition of the defendant would be the same, whether there

were fraud or not on the part of the plaintiffs. The case presented to the court is, whether, having been advised of the facts it will permit, if within its power to prevent, the defendant to be financially destroyed by a combination of facts and circumstances created by the plaintiffs and of which they are taking advantage.

It is suggested by counsel for the plaintiffs that the Superior Court has not full equitable powers of a court of chancery, and that therefore, the proper remedy of the defendant may in a court of equity. *Woodward, Baldwin & Co. v. Arlington Mills*, is cited. It is submitted that, there being plainly and clearly a remedy in this court, it would be futile to send the case to the Court of Chancery which will not take jurisdiction so long as there is a plain remedy at law. *Home Loan Ass'n v. Foard*, 3 *Pennewill*, 165, 50 *Atl.* 537, and *Woolley v. Corbit*, 3 *Pennewill*, 501, 51 *Atl.* 601, are inapplicable in this connection.

It is also suggested that the plaintiffs might be subjected to three trials in the proof of the amount claimed in the cause, one on the occasion of the inquisition at bar before final judgment was entered; a second upon the opening of the judgment; and third, by a trial under the provisions of *Rev. Code* 1915, § 4135, should the defendant, after trying the case upon the opening of the judgment, demand his further statutory right for a rehearing upon the same question of amount due under the provisions of the refunding bond. It may be that this contention is sound as a legal possibility. The improbability that there could be a really effective retrial of the issue of the amount due under the provisions of *Section* 4135, after a full hearing and decision against the defendant under the motion for opening the judgment for the same purpose is extreme. But, assuming that such a condition might be legally possible, the court is presented with a plain alternative, to wit, will it, by reason of the legal possibility of a rehearing under *Section* 4135, subject the defendant to a most disastrous loss? All substantial purposes of entering bail have ceased, inasmuch as the palintiffs now have the *res*, seized under the writ, formally held by the lien of the final judgment obtained.

The motions for relief in the present case, detailed in the petition for the opening of the final judgment, demonstrate the dili-

gence of the defendant and negative any suggestion of laches in pursuing his present remedy. Final judgment has been obtained. The statute does not limit the period within which an order of sale or execution must be applied for. No right of the plaintiffs can now be prejudiced if the court should say to the plaintiffs, "Wait a minute, while we inquire how much your claim really ought to be against this defendant." The case is therefore at last in a position where the court may, without any apprehension of inflicting an injustice, pass upon the merits of the application of the defendant to be heard in order to show that nothing is due from the defendant to plaintiffs.

In a broad sense, the judgment is not set aside; it is opened with the intent to be finally closed in a judgment of the same character if any amount is found to be due the plaintiffs, and so far as the lien of the judgment is concerned and the quality of the lien of the foreign attachment, they may be saved by an order allowing the attachment and judgments to stand as a lien against the property pending such examination of the amount due.

*Smith v. Eyre*, 149 *Pa. St.* 272, 24 *Atl.* 288, simply decided that a judgment entered by default in a suit commenced by a writ of foreign attachment binds only the property attached.

*McClenachan v. McCarty*, 1 *Dall.* 375, 1 *L. Ed.* 183, simply decided that a defendant in foreign attachment was not entitled to appear at the inquisition which was held to ascertain the amount of the default judgment.

As to *Railroad Co. v. Taylor*, 210 *U. S.* 281, 28 *Sup. Ct.* 616, 52 *L. Ed.* 1061, and *Ladew v. Copper Co.* (*C. C.*) 179 *Fed.* 245, the defendant is making no contention which interferes at all with the principles of those cases.

Courts have not frequently been called upon to consider the right in question. Such right was adjudged in *Smith v. Harris*. 135 *Ind.* 621, 623, 35 *N. E.* 984; *Callender v. Painesville, etc., R. Co.*, 11 *Ohio St.* 516, 520.

The right of a party to apply for relief by motion in a pending cause has never been questioned in Delaware.

Motions to open judgments in foreign attachment cases have

been presented and adjudicated, under parallel conditions to the case at bar. *Taylor v. Rossiter*, 6 *Houst.* 485; *In re Levy*, 3 *Pennewill*, 5, 50 *Atl.* 540; *In re Warthman*, 4 *Pennewill*, 319, 55 *Atl.* 6.

ARGUMENT AGAINST MOTION TO OPEN THE FINAL JUDGMENT.

Until bail be put in defendant is not in court to plead anything nor is plaintiff bound to declare against him. *Highmore on Bail*, 41; *Sellon's Prac.* 91; *Drake on Attach.* § 5.

The institution of a suit by foreign attachment processs is a statutory proceeding, which must be pursued conformably with the statutory provisions authorizing it. Here it is, in its original character, in the nature of an *ex parte* proceeding *in rem* to judgment of condemnation against the property bound by the foreign attachment; for, while it continues such, there is no appearance of the defendant, no defense whatever pleaded, no issue joined, and no trial had. *Frankel v. Satterfield*, 9 *Houst.* 201, 19 *Atl.* 898; *Wells v. Shreve's Adm'r*, 2 *Houst.* 329; *Nat. Bank of W. & B. v. Furtick*, 2 *Marv.* 35, 51, 42 *Atl.* 479, 44 *L. R. A.* 115, 69 *Am. St. Rep.* 99; and the opinion of the Court in Banc, first filed in this proceeding.

Remedy by attachment must be pursued in conformity with the terms of the' law conferring it. *Drake on Attachment*, § 4; *Reynolds v. Howell*, 1 *Marv.* 52, 59, 31 *Atl.* 875; *Penna. Steel Co. v. N. J. S. R. R. Co.*, 4 *Houst.* 572, 578; *Rev. Code* 1915, § 4137.

The method of ascertaining amount due on interlocutory judgments is provided for by *Rev. Code* 1915, § 3729.

The method for the disproving after judgment of the claim of the plaintiff in a foreign attachment proceeding is provided for by *Rev. Code* 1915, § 4135.

The maxim "*expressio unius est exclusio alterius*" controls and prevents the judgment in a foreign attachment proceeding from being opened in any manner other than that prescribed by statute. It also prevents the disproving of a claim after judgment in any manner other than as provided by the statute. *District Township v. Dubuque*, 7 *Iowa*, 262, 275, 276; *Scott v. Ford*, 52 *Or.* 288, 296, 97 *Pac.* 99; *State v. Gas Co.*, 15 *Ariz.* 294, 138 *Pac.* 781; *New Haven v. Whitney*, 36 *Conn.* 373, 375; *In the Matter of the Attorney General*, 2 *N. M.* 49, 56, 57.

An analysis of the cases and text-books shows that judgments are opened or vacated in three instances:

(1) Where the entire proceedings and judgment rendered thereon are null and void.

(2) Where a judgment may have been paid or otherwise discharged since its rendition and the judgment remain unsatisfied. *Lofland v. McDaniel*, 1 *Pennewill*, 416, 41 *Atl.* 882.

(3) Where a judgment may be set aside, vacated or opened, as a result of proceedings had:

(a) For material defects.

(b) For irregularity.

(c) Upon excuse and as a favor.

The first two are applicable to all judgments, the third to default judgments only.

No attack has been made on the judgment for a material defect therein or error in the record other than the allegation of nonproduction of letters, which is overcome by the record and the previous determination by the court; or for irregularity.

The basis of the application must be found, if at all, under the third head, a legal excuse for the default committed by him, viz. his nonappearance. Did the record and judgment disclose a fatal error, the judgment, of course, would be set aside regardless of the effect thereof on the plaintiff's position in court, as a matter of right and not as a matter of discretion. If defendant has permitted plaintiff to obtain judgment against him by default, the defendant may, in common-law actions, on showing a sufficient legal excuse therefor, have the default judgment set aside and the proceedings restored to that stage of the case which will permit a trial of the merits. Where a judgment is set aside, if the plaintiff can recover anew, a new judgment terminates the cause. It seems that in Pennsylvania a practice unknown to the common law has grown up whereby the judgment is *opened* to permit a trial, but on the termination of that trial, if the judgment be in favor of the same party the old judgment is *closed* and on the order of the court stands and is for amount determined by the last trial, but the courts have uniformly held that where a judgment is so opened it remains as security for whatever may be found due on

retrial, but in all other respects the subsequent proceedings are as if no judgment had ever been entered in the cause or proceeding. *Carson v. Coulter*, 2 *Grant, Cas.* (*Pa.*) 121; *Sossong v. Rosar*, 112 *Pa.* 197, 3 *Atl.* 768; *Harris v. Harris*, 154 *Pa.* 501, 26 *Atl.* 617; *Long v. Morning Star*, 212 *Pa.* 458, 61 *Atl.* 1007; *Farmer's Loan & Trust Co. v. Killinger*, 46 *Neb.* 677, 65 *N. W.* 790, 41 *L. R. A.* 222, and note; *Harbaugh v. Butner*, 148 *Pa.* 273, 23 *Atl.* 983.

*Mott v. Union Bank of N. Y.*, 38 *N. Y.* 18, determines the status of a default judgment upon which the defendant was permitted to plead.

The Pennsylvania courts have also held that an opened judgment is not a final judgment in the full sense of the term. *Savage v. Kelly*, 32 *Legal Int.* (*Pa.*) 5.

When the judgment is opened it remains a judgment, instead of being stricken off, solely for the protection of the plaintiff, to furnish security for him in the event that he recovers on the retrial. It does not remain a judgment against the defendant in any sense as a reward to the defendant for having been in default.

As a defendant cannot defend before judgment without first appearing, he cannot, of course, when the judgment is in legal effect stricken off to permit him to defend, any more defend without appearing, than he could originally have defended without appearing.

Assuming that the defendant has shown a sufficient legal excuse for his default, viz., his failure to appear, the court would not open the judgment and thereby leave the record in a condition which migh debar the plaintiff from ultimate relief in event of failure of defendant to appear, unless the court is assured that defendant can and will appear as required by the statute. The petition expressly avers the inability of the defendant to enter special bail now even were the judgment opened.

The defendant can appear on judgment opened only as he may appear before judgment rendered, viz., by giving special bail.

In *Taylor v. Rossiter*, 6 *Houst.* 485, the points here raised were not called to the attention of the court and were not passed upon.

*In re Levy*, 3 *Pennewill* 5, 50 *Atl.* 540, a motion was made

that the judgment be opened and that the defendant be permitted to come in and plead and give security, which, it is submitted, was a proper application. The court considered merely the procedure of opening judgments and directed that a rule issue.

In *In re Warthman*, 4 *Pennewill* 319, 55 *Atl.* 6, an application was made that the defendant be allowed to enter into a recognizance, appear in court, and move to dissolve the attachment. This application was apparently considered as being in substance the same as the motion made in *In re Levy*. The court considered the question merely of dissolving the attachment, and held that the attachment remained. The effect of opening the judgment or manner of defendant's subsequent appearance were not before the court and were not passed upon, nor was the attention of the court called to the fact that when the defendant appears, the plaintiff if he obtain judgment is entitled to a judgment *in personam*. Also that such judgment be secured by special bail. The defendant's appearance would prevent the final judgment being a judgment *in rem* and a judgment *in personam* without the requisite special bail against a nonresident, would probably be without benefit to the plaintiff.

These three cases are not authorities against the contentions of the plaintiffs.

The case of *McDaniel v. Townsend*, 4 *Pennewill* 359, 55 *Atl.* 6, should be considered in this connection.

No impropriety whatsoever or improper motive is attributed to the plaintiffs in the cause in Colorado. The petition in substance shows that it is a cause duly instituted and prosecuted. This proceeding could have no effect whatsoever, unless it were shown to have been instituted or prosecuted for the purpose of defrauding this defendant. Fraud is not alleged, and fraud is never presumed. In substance then, the petition presents as the sole ground for opening the judgment, the inability of the defendant to furnish special bail. The statute contains no exception in favor of persons unable to furnish special bail and it provides no exception for such persons.

The plaintiffs deny that there is any equity shown by the petition. *Banorgee v. Hovey et al.*, 5 *Mass.* 24, 4 *Am. Dec.* 17.

That the Superior Court has not in the exercise of its discretion full equity powers is shown by *Woodward, Baldwin & Co. v. Arlington Mills*, 2 *Pennewill* 188, 44 *Atl.* 620.

The defendant has a statutory right of trial (*Rev. Code* 1915, § 4135), after the property condemned has been sold. It does not accord with legal ideas that the defendant should have the opportunity he now seeks to try his case and also another afterwards under the foregoing section of the Code.

The contention of the defendant is inconsistent with the theory of foreign attachment proceedings. *McClenachan v. McCarty*, 1 *Dall.* 375, 1 *L. Ed.* 183.

That hardship is not a sufficient ground for vacating judgment is shown by *Home Loan Ass'n v. Foard*, 3 *Pennewill* 165, 50 *Atl.* 537, *Woolley v. Corbit*, 3 *Pennewill* 501, 51 *Atl.* 601; *Railway Co. v. Taylor*, 210 *U. S.* 281, 295, 28 *Sup. Ct.* 616, 52 *L. Ed.* 1061, and *Ladew v. Copper Co.* (*C. C.*) 179 *Fed.* 245.

It is to be remembered that giving special bail or bond as a prerequisite to appearance is required by our law in instance other than attachment. Had the defendant been able to give special bail prior to the final judgment he would not have been, permitted to defend without incurring the risk of a judgment *in personam* against him. Is a defaulting defendant to be placed in a superior position to a defendant who makes no default?

The statute prevents the defendant being heard before judgment without his giving special bail; yet the defendant now seeks the court to permit him to do after judgment what the statute prevented his doing before judgment.

Defendant's petition fails to show that were his default excused he could now enter special bail and thereby prevent a similar default. He relies on the discretionary or equitable powers of the court for relief. The object of the petition is not to show that the debt has been discharged or other defense arisen since the rendition of the judgment, but he seeks to have the judgment opened or set aside to show that nothing, or a smaller amount than called for by the judgment was due when the judgment was obtained.

No case, with the possible exception of the three Delaware

cases cited has been found which has held that a judgment *in rem* may be opened and remain as security pending a trial on the merits.    It is submitted that this cannot be done, for the theory of opening a judgment and letting it remain cautionary as security is that when it is closed it will be closed in the same form in which it originally was, possibly for a different amount, but opening a judgment *in rem* collectible only from the property attached and later closing it as a judgment *in personam* is a legal feat which has never yet been accomplished.

All the cases cited by counsel for defendant touching the opening of judgments show that an "opened" judgment lacks the quality of *res adjudicata* and "it leaves the action still pending and undetermined."    On what theory then, may he now appear in the *pending and undetermined* action, save by giving special bail?    None, save as provided by *Rev. Code* 1915, § 4135.

The judgment here is unknown to the common law, the right thereto being given by statute.    When such judgment is obtained in conformity with the statute, the plaintiff's right thereto is made absolute, *Rev. Code* 1915, § 4137; and there is no room for the operation of the alleged common-law powers of the court.    The court must give judgment for the plaintiff, under *Rev. Code* 1915, § 4137, when he has complied with the statutory conditions precedent, and must ascertain the amount due thereupon by inquisition.    *Rev. Code* 1915, § 3729.

It is submitted that the defendant has not shown a right to have the judgment opened.    *Carpentier v. Insurance Co.*, 2 *Bin.* *(Pa.)* 264; *Bushel v. Insurance Co.*, 15 *Serg. & R.* *(Pa.)* 181; 36 *Cyc.* 1103; *St Louis & S. F. R. Co. v. Delk*, 158 *Fed.* 931, 934, 86 *C. C. A.* 95, 14 *Ann. Cas.* 233; *Ladew v. Tennessee Copper Co.* *(C. C.)*, 179 *Fed.* 245, 252; *Railroad Commission v. Grand Trunk Western R. Co.*, 179 *Ind.* 255, 100 *N. E.* 852, 855.

Our contention is, that the opening of the judgment *leaves the action still pending and undetermined* and as the defendant could not originally appear in the *pending and undetermined action* without giving security, he cannot otherwise appear therein when the action is restored to a pending and undetermined status.

*Smith v. Eyre*, 149 *Pa.* 272, 24 *Atl.* 288, seems directly in conflict with the contention of counsel for the defendant.

It follows from this case that the defendant has not yet appeared in the main cause, and the Court in Banc has held that the defendant cannot appear in the *pending and undetermined action* save by giving bail.

Apart from the reply now made to the argument of counsel for the defendant, it is respectfully submitted that the statute is controlling upon the question before the court.

*Rev. Code* 1915, § 4137, gives the plaintiff an absolute and unqualified right to judgment.

*Rev. Code* 1915, § 3729, prescribes the method of ascertaining the amount of such judgment. The right to this judgment being statutory, the plaintiff may not be deprived of this judgment if it be regularly obtained. *Rev. Code* 1915, § 4169, provides for judgment for plaintiff at the first term in default of affidavit of defense. This likewise, it is submitted, would be an absolute and unqualified judgment were it not for a provision in the statute (same section) authorizing the court to open such judgment under the conditions there provided and it cannot be imagined that the court would open such judgment under any terms other than those therein provided.

*Rev. Code* 1915, § 4089, provides for judgment for default of appearance in suits instituted by writ of summons. This statute also authorizes the court to take off such default judgments under the conditions there mentioned. *Woolley v. Corbit*, 3 *Pennewill* 501, 51 *Atl.* 601, and *Home Loan Ass'n v. Foard*, 3 *Pennewill* 165, 50 *Atl.* 537, show that such judgment can be taken off only in the method prescribed by the statute.

*Rev. Code* 1915, § 4135, provides for defense by defendant in the event of his having sustained judgment by default in the foreign attachment proceeding.

The statute therefore makes the right of the plaintiff to a judgment under *Section* 4137 absolute, save as qualified by *Section* 4135, and the court is therefore deprived by the statute of any power to open a judgment regularly obtained under *Section* 4137,

however great in the opinion of the court the hardship imposed on the defendant by such statute.

It is submitted, therefore, that the court cannot open the judgment in the case at bar, it having been regularly obtained, under any terms whatsoever.

The court in *Taylor v. Rossiter*, *In re Levy*, and *In re Warthman* were probably led into error by overlooking the limited scope of *Section* 4089 and without considering the points herein set forth.

PENNEWILL, C. J., delivering the opinion of the Court in Banc:

After the plaintiffs had obtained final judgment in this case, the defendant filed a motion asking that the same be opened, and that he be permitted to appear and disprove or avoid the plaintiff's claim, and that the judgment be vacated.

The rule to show cause, issued upon such motion, was served, upon plaintiffs' counsel, it not being possible to serve it upon the plaintiffs' themselves, because they were not in this state.

[5] While objection is made to such service, it appears to be formal only, and is not urged with much force or confidence. It is unnecessary, we think, to give any reasons or authorities for holding that the service of the rule was good and legal. The only question for the court to consider is whether the judgment in question should be opened.

[6] The court have been very strongly impressed, during the progress of this case, with the thought that the situation of the defendant was not only a hard one, but also very exceptional.

Having no property whatever except the corporate stock attached, the attachment together with the receivership secured in Colorado made it impossible for the defendant to enter the bail demanded in the action. By the receivership proceeding the stock was stripped of any immediate market value and became practically worthless as a security or pledge for advancement or loan. For that reason the court were at one time strongly inclined to believe that after final judgment was obtained and the lien perfected, it would be just to the defendant and not unfair or prejudicial to the plaintiffs to open the judgment so that the case could be tried upon the merits without requiring the entry of

security or special bail. We have no doubt that a court of general jurisdiction, in the control of its own judgments, has the inherent power to open a judgment of this character if convinced that it would be in furtherance of justice to do so.

Such power has been exercised or recognized by the Superior Court of this state in cases similar in character to the present case. *Taylor v. Rossiter*, 6 *Houst.* 486; *In re Warthman*, 4 *Pennewill* 319, 55 *Atl.* 6; *In re Levy*, 3 *Pennewill* 5, 50 *Atl.* 540.

But those cases were different from the present one in this important particular: The defendant had no knowledge of the attachment until final judgment was obtained. It was impossible for him to dissolve the attachment by entering security because he had no opportunity to do it. He was entirely ignorant of the proceeding, and the court held that he should have an opportunity to make his defense.

In the present case the defendant had knowledge of the attachment from the time it was made, and the only excuse he can give for failing to appear is that it was impossible for him to furnish security in the large amount demanded.

Because of the peculiar circumstances of the case, and the inability of the defendant to appear by giving the bail required, his motion to open the judgment in order that he might have an opportunity to make a defense, and the case be tried on the merits, appealed strongly to the sympathy and discretion of the court. But after a most careful consideration of all the facts we are forced to the conclusion that no sufficient reason has been shown to justify the opening of said judgment.

We are clearly of the opinion that the Legislature ought to provide for the opening of a judgment in foreign attachment against an individual in the same manner as is provided in cases against corporations, but we are equally clear that the court cannot relieve the defendant from the hardship imposed by the statute. To do so would be judicial legislation.

While the position of the defendant is difficult and unfortunate, the case is, after all, not exceptional save in the amount of bail demanded.

Another case involving similar facts will probably never

arise in the Superior Court again, but it will frequently happen that a defendant will find it impossible to furnish the security required; and such impossibility may be caused by the fact that he has no property other than that attached. It may be just as difficult or impossible for an individual of small means to furnish the bail required to dissolve the attachment as for a man of large property which is so situated as to be unavailing as security for a loan.

The fact that the receivership in Colorado has deprived the property of the defendant of any immediate market value is, we think, immaterial in the present case, and cannot avail the defendant in his motion. For anything that appears in his petition the receiver was regularly appointed. We must assume that the court was justified in making the appointment. Indeed, the defendant does not charge that the receivership was caused by any fraud or unfairness on the part of the plaintiffs, or that the purpose of the plaintiffs in securing the appointment of the receiver was to enable them to obtain possession of his property by foreign attachment proceeding. There does not seem to be any connection between the two proceedings at all.

Being unable to find any facts in this case that would justify the court in opening the judgment in question, without security, the defendant's motion is refused.

It is ordered that the foregoing opinion be and it is certified to the said Superior Court.

(Signed by the Judges.)

Whereupon the Superoir Court made the following order:

*Per Curiam.* And now, to wit, this twenty-seventh day of November, A. D. 1916, on motion of the plaintiffs' attorneys, for an order to sell the shares of stock attached by virtue of the above writ, or as many shares as shall be sufficient to satisfy the debt, interest and costs of the judgment obtained upon the said writ:

It is ordered by the court that the said shares, or so many of these shares as shall be sufficient to satisfy the debt, interest and costs aforesaid, be sold at public vendue to the highest bidder, upon such notice as is required for sales upon execution process.